BOARD OF HIGHER EDUCATION & another[1] *vs.*
MASSACHUSETTS TEACHERS ASSOCIATION, NEA.

No. 03-P-427.

Essex. February 12, 2004. - September 15, 2004.

Present: LENK, COWIN, & GREEN, JJ.

*Education,* Public colleges and universities. *Arbitration,* Authority of arbitrator, Collective bargaining. *Public Employment,* Collective bargaining. *Labor,* Arbitration, Collective bargaining, Public employment. *School and School Committee,* Arbitration, Collective bargaining, Termination of employment.

Discussion of the standard of judicial review of an arbitrator's award. [46-47]

An arbitrator did not exceed his authority in determining that a college faculty member had been terminated from his employment, where the college's decision to prohibit the faculty member from teaching in a particular program constituted disciplinary action and therefore was reviewable by the arbitrator [47-48]; moreover, the arbitrator acted within his authority in determining whether the college adhered to the procedures concerning termination and suspension that were set forth in a collective bargaining agreement in deciding whether to appoint the faculty member to the program, and having found that the college violated the agreement, the arbitrator acted within his authority in awarding money damages for the college's past violation of the agreement [48-51].

This court discerned no violation of public policy in an arbitrator's award to a college faculty member who had been terminated from his employment in violation of the terms of a collective bargaining agreement, where the college offered no evidence to the arbitrator supporting allegations of sexual harassment by the faculty member, and thus, there was no evidence from which to conclude that the faculty member had engaged in disfavored conduct integral to the performance of his employment duties; and where the arbitrator's award did not require the college to appoint the faculty member to teach. [51-52]

CIVIL ACTION commenced in the Superior Court Department on April 27, 2001.

The case was heard by *Nancy Staffier,* J.

[1] Trustees of Salem State College.

*Susan Lee Weissinger* for the defendant.

*James B. Cox* for the plaintiffs.

LENK, J. An arbitrator determined that Salem State College (college) violated its collective bargaining agreement when it terminated Adeleke Atewologun from teaching in its division of graduate and continuing education (DGCE) for the spring, 2000, semester, and indefinitely suspended him from teaching in the DGCE thereafter. The arbitrator's award required, inter alia, that the college restore Atewologun's eligibility for appointment to teach in the DGCE. A judge of the Superior Court vacated the award on the basis that the arbitrator had exceeded his authority. The Massachusetts Teachers Association (association) appeals from the amended judgment[2] of the Superior Court vacating the arbitration award. We reverse.

*Background.*[3] The college is a public institution of higher learning in the Commonwealth. G. L. c. 15A, § 5. In addition to its daytime undergraduate program, the college offers evening courses in the DGCE. See G. L. c. 15A, § 26.[4] The college and the association are parties to a collective bargaining agreement (agreement) that governs the terms and conditions of employment in the DGCE.

Atewologun was hired by the college in the fall of 1987. He taught as a full-time day faculty member in the political science department[5] and also taught courses in the DGCE program. In order to be eligible to teach in the DGCE, Atewologun had to be included in the designated continuing education pool of faculty candidates, and he had to be recommended by the DGCE chair for appointment to teach in the DGCE prior to the com-

---

[2]An amended judgment was entered because the original judgment did not name both plaintiffs.

[3]We summarize the facts as found by the arbitrator.

[4]General Laws c. 15A, § 26, inserted by St. 1991, c. 142, § 7, provides, "Each public institution of higher education may conduct summer sessions, provided such sessions are operated at no expense to the commonwealth. Each public institution of higher education may conduct evening classes, provided such classes are operated at no expense to the commonwealth."

[5]The issues at arbitration were limited to Atewologun's employment with the DGCE and did not involve his status as a full-time tenured member of the college's day faculty.

mencement of an instructional period.[6]

Atewologun had been appointed to teach in the DGCE for the spring, 2000, semester.[7] On January 26, 1999, a student submitted a written complaint to the college alleging that Atewologun had sexually harassed her. On March 23, 1999, another student wrote to the college also alleging that Atewologun had sexually harassed her. Both students filed lawsuits against the college and Atewologun. The president of the college, Nancy Harrington, in a letter dated December 3, 1999, informed Atewologun that it had been "credibly asserted" to her that he had "engaged in recent weeks . . . in a course of purposeful conduct that has had as it evident purpose to embarrass, harass, and intimidate" one of the students who had filed a complaint of harassment. Harrington directed Atewologun to cease all contact with the student.

In a second letter, dated January 13, 2000, Harrington informed Atewologun that, in order to conduct an investigation of the alleged harassment, she had decided "to place [him] on leave, with pay, immediately and until further notice, and to relieve [him] during that leave of all responsibilities as a full-time member of the faculty." Harrington further stated, "I have also instructed the Division of Graduate and Continuing Education to refrain from offering you any appointments to teach within the Division during the pendency of your leave." Atewologun did not teach in the DGCE during the spring, 2000, semester, nor has he taught in or received compensation from the DGCE program thereafter.

In a letter dated January 27, 2000, the association requested information from the college regarding the complaints against Atewologun; the college did not respond. The association then

---

[6]Article VI, Section C.1., of the agreement provides:

> "Prior to the commencement of each instructional period, the DGCE Chair, or designee thereof, shall submit to the Dean all recommendations for the appointment of persons to teach courses that are offered through the department in the Program of Graduate and Continuing Education. Except in an emergency, all such recommendations shall be made only in respect of persons whose names are included in the Continuing Education Pool."

[7]The college maintains that Atewologun had not been appointed to teach for the spring, 2000, semester. We are bound by the arbitrator's findings.

filed a grievance challenging the college's decision to terminate Atewologun from teaching in the DGCE program. The college denied the grievance by letter dated April 24, 2000. The matter proceeded to arbitration on the following stipulated issue:

> "Did the Board of Higher Education violate the collective bargaining Agreement . . . by the letter that Nancy Harrington, President of Salem State College, addressed to Professor Adeleke Atewologun on January 13, 2000, and by its response or lack thereof to [his] request for information . . . ? If so, what shall be the remedy?"[8]

At the hearing, the association maintained that Atewologun had been terminated from teaching in the DGCE for the spring, 2000, semester, without just cause, and that such action violated Article VI, Section E of the agreement, which provides in part:

> "No unit member shall be disciplined or suspended without cause or terminated without just cause. Whenever any unit member is terminated during the term of any appointment, said member shall first be accorded the following rights: . . . ."

The college took the position that since it was under no contractual obligation to permit Atewologun to teach in the DGCE spring, 2000, semester, no termination or discipline had taken place. In the alternative, the college argued that it had cause to discipline Atewologun.

The arbitrator determined that the college had terminated Atewologun from teaching in the DGCE for the spring, 2000, semester, and that the action was disciplinary and without just cause. Similarly, the arbitrator found that the continuing suspension from eligibility to teach in the DGCE also constituted discipline to which the agreement applied. The arbitrator concluded that because the president had not evaluated Atewologun's professional performance or investigated the allegations against Atewologun before taking disciplinary action, the college's decision to suspend Atewologun from eligibility to teach in the DGCE violated the agreement.

---

[8]The parties stipulated, inter alia, that "[t]he President's decision set forth in her January 13, 2000 letter to the Grievant [Atewologun] was not based upon an evaluation of the Grievant conducted pursuant to the Agreement."

As remedy, the arbitrator ordered the following: (a) Atewologun was to be paid compensation in the amount he would have received for teaching in the DGCE for the spring, 2000, semester; (b) Atewologun was to be reinstated to the continuing education pool and thereby rendered eligible "to be considered for appointment to teach in the DGCE to the same extent as other members of the pool"; and (c) Atewologun was to be compensated for the pay he lost due to ineligibility during the period between the DGCE spring, 2000, semester and the date of the arbitration award (March, 2001), the amount to be calculated on the basis of Atewologun's average DGCE teaching load for the preceding five years.[9]

The college filed a complaint in Superior Court to vacate or modify the award, and the association answered, seeking a judgment confirming the award pursuant to G. L. c. 150C, § 11(*d*). The judge, concluding that the decision to prohibit Atewologun from teaching in the DGCE was one of educational policy within the exclusive power of the college pursuant to G. L. c. 15A, § 22, vacated the award on the ground that the arbitrator had exceeded his authority. The association appeals.

*Discussion. Standard of review.* On appeal we assess whether the judge properly vacated the award on the basis of one of the five grounds enumerated in G. L. c. 150C, § 11.[10] See *School*

---

[9]The arbitrator also directed the college to respond to the association's request for information regarding the complaints. The college does not dispute that portion of the award.

[10]General Laws c. 150C, § 11, inserted by St. 1959, c. 546, § 1, provides, "(a) Upon application of a party, the superior court shall vacate an award if: — (1) the award was procured by corruption, fraud or other undue means; (2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party; (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law; (4) the arbitrators refused to postpone the hearing upon a sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five as to prejudice substantially the rights of a party; (5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the award orders reinstatement of an employee with or without back pay or grants relief such that it could not grant or would not be granted by a court of law or equity shall not be ground for vacating or refusing to confirm the award."

*Comm. of Pittsfield* v. *United Educators of Pittsfield*, 438 Mass. 753, 758 (2003). Because of a strong public policy favoring arbitration, judicial review of an arbitrator's award is limited in scope. We may not pass on an arbitrator's alleged errors of law or fact.[11] *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers' Assn./Mass. Community College Council*, 423 Mass. 23, 27 (1996) (hereinafter *HECC* v. *MTA*). However, the question whether an arbitrator exceeded his or her authority is always subject to judicial review. *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 792 (1977).

We must determine whether the arbitrator exceeded his authority either because he rendered an award that infringed upon prerogatives reserved exclusively to public school administrators by G. L. c. 15A, § 22, or because he rendered an award that violated public policy. See *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16 (1995); *Lyons* v. *School Comm. of Dedham*, 440 Mass. 74, 79 (2003). "[U]nless the arbitrator's decision infringed on an area of educational policy reserved for the exclusive judgment of the administrators of the college, it cannot be disturbed." *HECC* v. *MTA*, 423 Mass. at 27.

*Termination and suspension.* The college argues that the arbitrator improperly determined that Atewologun had been terminated from his employment in the DGCE for the spring, 2000, semester, relying upon *HECC* v. *MTA*, 423 Mass. at 26. In that case, an arbitrator found that a vacancy existed in the mathematics department; on appeal, the court held that this finding was "improper." *Id.* at 33. The college urges that we should likewise consider and reject the arbitrator's finding that Atewologun was terminated for the spring, 2000, semester. In *HECC* v. *MTA*, however, the court determined that it was improper for the arbitrator to have found that a vacancy existed, not because the arbitrator's fact finding was flawed, but because it was beyond the scope of the arbitrator's power to make any determination as to a vacancy. *Id.* at 32-33. The difference is subtle but central. Because the collective bargaining agreement at issue in *HECC* v. *MTA* provided that a "vacancy" was "a

[11]See note 7, *supra.*

position for which funding [was] available and which the administration intend[ed] to fill," it was within the exclusive authority of the college to determine whether a vacancy existed. *Id.* at 26, 33. In contrast, here the college took the position during arbitration that its decision to prohibit Atewologun from teaching in the DGCE did not constitute disciplinary action; accordingly, the college maintained, the decision was not reviewable by the arbitrator.

Based upon his review of the factual record before him and his analysis of the agreement, however, the arbitrator determined that the college's action was disciplinary, and was therefore reviewable. "Unlike our review of factual findings and legal rulings made by a trial judge, we are strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing." *Boston Police Patrolmen's Assn.* v. *Boston*, 60 Mass. App. Ct. 672, 674 (2004), quoting from *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). The college does not point to a provision in the agreement like that in *HECC* v. *MTA*, 423 Mass. at 26, 33, which delegates exclusively to itself the power to determine whether a termination has in fact taken place. Instead, Article VI, Section E of the agreement ("No unit member shall be disciplined or suspended without cause or terminated without just cause") indicates that a determination whether termination without just cause took place falls squarely within the ambit of the arbitrator's authority. Similarly, the arbitrator determined that the decision to remove Atewologun from the eligibility list for the DGCE for an indefinite period of time constituted discipline to which the agreement applied. The issues presented for the arbitrator's disposition required that he ascertain whether termination without just cause and discipline had taken place; he did not exceed his authority in so doing.

*Appointment.* The college next maintains that the decision whether to appoint Atewologun to teach in the DGCE was a matter within its exclusive managerial prerogative and therefore outside the scope of the arbitrator's authority. It relies upon G. L. c. 15A, § 22, inserted by St. 1991, c. 142, § 7, which provides, in relevant part: "Each board of trustees of a community college or state college . . . shall . . . appoint, transfer,

dismiss, promote and award tenure to all personnel of said institution . . . ." The statute confers upon the administrators of public colleges and universities "unfettered authority to make decisions bearing on core issues of educational policy" in an effort to provide the most effective education for the Commonwealth's students. See *HECC* v. *MTA*, 423 Mass. at 29. This authority extends to decisions "concerning staffing and personnel." *Id.* at 28.

By virtue of such statutorily nondelegable authority, there are limitations upon what obligations a public school may undertake in collective bargaining agreements[12]; it may not, for instance, delegate for decision by arbitration its authority to make "specific appointment determinations, and decisions to abolish positions." *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 211 (1982). We agree that had the arbitrator required the college to appoint Atewologun, he would have exceeded his authority.

However, a school "may bind itself to follow certain procedures with respect to decisions committed to its exclusive authority, and a failure to follow those procedures may be the basis for an arbitrable grievance." *HECC* v. *MTA*, 423 Mass. at 28. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 114 (1977). In that way, school employees may be procedurally protected from ill-motivated discipline or termination, while the school maintains its substantive authority.

It follows that, while it was not within the authority of the arbitrator to order the appointment of Atewologun to teach in the DGCE, it was within his authority to determine whether the college adhered to the procedures set forth in the agreement concerning termination and suspension. The arbitrator found that the college violated the agreement when it terminated Atewologun without giving him notice of the charges, access to information regarding those charges, and an opportunity to deny, explain or justify his actions:

---

[12]"Our decisional law has acknowledged that tension exists between legislation authorizing collective bargaining agreements protecting the rights of public employees, see G. L. c. 150E, §§ 1, 2 (1994 ed.), and the recognition of an exclusive domain of authority for local school committees, protected by the nondelegability doctrine." *HECC* v. *MTA*, 423 Mass. at 28.

"The record is devoid of any evidence that the President [Harrington] had proof that the Grievant [Atewologun] had engaged in the activities contained in the allegations, charges or complaints referenced in her January 13, 2000 letter. The record is equally devoid of evidence that the President afforded the Grievant the due process protections to which he was entitled pursuant to Article VI, Section E of the Agreement prior to her issuance of instruction that he not be allowed to teach in the DGCE program. . . . [T]he College did not have just cause to terminate his DGCE employment for the 2000 spring Semester . . . ."

The arbitrator similarly found that "the President's decision to deprive the Grievant of the eligibility to teach in the DGCE program . . . was not based upon a factual verification of the allegations leveled against the Grievant or even a [thorough] investigation of those allegations." The arbitrator further found that removal of Atewologun from the DGCE eligibility list was therefore discipline to which the agreement applied.

Having found that the college violated the agreement, it was also within the arbitrator's authority to award money damages for the college's past violation of the agreement, as long as the award did not compel appointment. The college argues that because the damage award for the suspension is based upon compensating Atewologun for a period of time when he was not appointed to teach, it is the functional equivalent of an order to appoint him. In *HECC* v. *MTA*, where the Supreme Judicial Court determined that the arbitrator exceeded his authority in concluding that a vacancy existed, the court held that it was nonetheless "within his power to award damages for the college's violation of the agreement, so long as the damages were in an amount that would not 'have the effect of compelling reinstatement.' " *HECC* v. *MTA*, 423 Mass. at 33, quoting from *School Comm. of Holbrook* v. *Holbrook Educ. Assn.*, 395 Mass. 651, 657 (1985). Therefore, even in circumstances where an arbitrator exceeds his authority in deciding certain aspects of a dispute — which he did not do here — the award of damages is separable from that action. Here the arbitrator acted within his authority in fashioning the remedy. Compare *HECC* v. *MTA*, *su-*

*pra* at 33. Because, pursuant to Article VI, Section C.1., of the agreement,[13] the college retained the prerogative not to recommend Atewologun for appointment even though he was again to be among the faculty members in the continuing education pool eligible for appointment, the school's managerial authority was not invaded by that portion of the arbitrator's award.[14]

*Public policy.* Finally, the college argues that the arbitrator's award offended the strong public policy against sexual harassment and was for that reason beyond the arbitrator's scope of authority. See *Lyons* v. *School Comm. of Dedham*, 440 Mass. at 79. An award may be vacated if (1) it violates a "well defined and dominant" public policy, (2) the employee has engaged in disfavored conduct "integral to the performance of employment duties," and (3) the conduct violates public policy to such an extent that it requires dismissal. *Lynn* v. *Thompson*, 435 Mass. at 63, quoting from *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93*, 420 Mass. at 16, 17. Mindful that there is unquestionably an important public policy against sexual harassment, we must nonetheless be "cautious" when applying the public policy doctrine to vacate an arbitration award. See *Lyons* v. *School Committee of Dedham*, 440 Mass. at 79.

The arbitrator in this case made factual findings that the college had not put forward evidence supporting the allegations of sexual harassment and made a ruling of law that the college violated the agreement by the procedure (or lack thereof) it employed to terminate and suspend Atewologun from the DGCE. This case is therefore quite unlike *School Dist. of Beverly* v. *Geller*, 435 Mass. 223 (2001), where an arbitrator made findings of fact that there had been three incidents involving the use of physical force by a teacher against sixth grade students. The arbitrator's award reinstating that teacher was a violation of a public policy because the protection of children is a well defined and dominant public policy of the Commonwealth, and because the teacher's abusive conduct was integrally related to

---

[13]See note 6, *supra*.

[14]Nor did that portion of the arbitrator's award ordering monetary compensation invade the school's managerial authority. See *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 395 Mass. 232, 235 (1985).

his employment and required dismissal. *Id.* at 238 (Ireland, J., concurring).

In the case before us, the college offered no evidence to the arbitrator of the alleged harassment; accordingly, there was no evidence from which to conclude that Atewologun had engaged in disfavored conduct integral to the performance of his employment duties. See *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 604-605 (2000). In addition, the arbitrator's award did not require the college to appoint Atewologun to teach. Cf. *School Dist. of Beverly* v. *Geller*, 435 Mass. 223. We therefore discern no violation of public policy. See *Lynn* v. *Thompson*, 435 Mass. at 63.

Pursuant to G. L. c. 150C, § 11, and for the reasons stated above, we vacate the amended judgment of the Superior Court and order that judgment enter confirming the arbitration award.

*So ordered.*