MacDonald, D. Lloyd, J.
This case stems from an arbitration award following the dismissal of Dr. Chandrakant Panse (“Professor Panse” or “Panse”) from his tenured faculty position in the biotechnology program at Massachusetts Bay Community College (“plaintiff’ or “the College”). The college is a public institution of higher learning in the Commonwealth. See G.L.c. 15A, §5.
In 1993, Professor Panse joined the College’s faculty. He became eligible for tenure in 1999, but he was initially denied tenure on the basis of an unsatisfactory evaluation. Panse brought a legal action challenging the determination. Thereafter, the evaluation was favorably revised, and he was awarded tenure. However, reverberations of the litigation continued, including Professor Panse’s allegations of retaliation for his public criticism of the College and its administrators. (The Boston Globe published two articles about the controversial relationship between Professor Panse and the College in October 2001.)
In March 2002, following the College’s receipt of a student’s complaint with regard to the manner Professor Panse taught a class titled “Biotechnology Rotation II,” the College undertook an investigation. The complaint raised issues as to whether Panse was absent from the laboratory during significant parts of scheduled class periods, whether the safety of students was jeopardized by a failure to supervise students directly, whether he rescheduled and reduced his class time without authorization, whether he inappropriately assigned students to teach or supervise other students in the laboratory, and, generally, whether Panse failed to provide instruction consistent with the course description.
The College’s investigation allegedly corroborated the complaint, and on August 2, 2002, Panse was terminated following notice and formal hearing. The grounds were findings of a failure to teach and supervise his students.
At all times material to the matter before the Court, a collective bargaining agreement (“CBA” or “the Agreement”) existed between the parties. Specifically, the Agreement was in effect from July 1, 1999 through July 30, 2002, and was extended through June 30, 2003. The CBA contains a provision for the arbitration of grievances. As to the dismissal of a facully member, the Agreement provides that it could happen only for “just cause” and “shall not be invoked except through due process.” Article 15.02. If the decision is adverse, the Defendant “may initiate arbitration . . .” Id. at §15.02(8){b).
A grievance arising from Professor Panse’s dismissal was submitted for arbitration. The defendants argued to the arbitrator that Panse never received a clear directive to remain inside the laboratory during class hours and further argued that the class in the past had been run similarly but without complaint from the College administration. The defendants also contended that the College’s investigation was unfair and that Panse’s termination was arbitrary, capricious and unreasonable.
The College, in turn, argued that there was just cause to terminate Panse based upon the facts developed in its investigation. The College further submitted that Panse was accorded whatever fair process was due pursuant to the CBA.
The arbitrator made initial findings that Professor Panse was entitled to greater clarity in the notice he was provided as to what was expected of him. Further, the arbitrator found that Panse ought to have been given an opportunity thereafter to bring his performance timely up to acceptable levels. The arbitrator also found that Panse’s ongoing litigation against the College may have been a factor in his dismissal. Finally, the arbitrator determined that Panse’s termination was arbitrary, capricious and unreasonable. The arbitrator remanded the decision to the President for reassessment, pursuant to Article 10.06 of the Collective Bargaining Agreement.
On December 8, 2004, after reassessment, a new President at the College affirmed the College’s dismissal decision, making an independent finding that Panse had failed to perform the core functions of his position. The President noted a compelling interest in having faculty teach and supervise their students during all scheduled class and laboratory sessions.
Pursuant to Article 10.06 of the Collective Bargaining Agreement, the defendants again appealed the decision of the College. And on February 2, 2005 the arbitrator found, again, that the decision to terminate Panse was without just cause and that it was arbi- *704 traiy, capricious and/or unreasonable. The arbitrator voided the dismissal and ordered Panse’s reinstatement, along with back pay.
Now before this Court is the plaintiffs motion for judgment on the pleadings to vacate the arbitration award, as well as the defendants’ cross motion to confirm the arbitrator’s award.
Legal Standards
Massachusetts Rule of Civil Procedure 12(c) sets forth that “[ajfter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings.” The effect of a motion for judgment on the pleadings is “to challenge the legal sufficiency of the complaint.” Minaya v. Massachusetts Credit Union Share Ins. Corp., 392 Mass. 904, 905 (1984), quoting Burlington v. District Attorney for the N. Dist., 381 Mass. 717, 717-18 (1980). “For purposes of the court’s consideration of the [rule 12(c)] motion, all of the well pleaded factual allegations in the adversary’s pleadings are assumed to be true and all contravening assertions in the movant’s pleadings are taken to be false.” Id., quoting 5 C.A. Wright & A.R. Miller, Federal Practice and Procedure §1368, at 691 (1969).
The court’s review of an arbitration award is limited in scope. G.L.c. 150C, §11; School Committee of Hanover v. Hanover Teacher’s Ass’n., 435 Mass. 736, 740 (2002). The court reviews an arbitration award only to determine if the arbitrator has exceeded the scope of her authority, or decided the matter based on fraud, arbitrary conduct or procedural irregularity in the hearings. G.L.c. 150C, §11; Plymouth Carver Regional School Dist. v. J. Farmer & Co., 407 Mass. 1006, 1007 (1990). “An arbitrator exceeds his authority by granting relief beyond the scope of the arbitration agreement ... by awarding relief beyond that which the parties bound themselves ... or by awarding relief prohibited by law.” G.L.c. 150C, §11; School Committee of Hanover v. Hanover Teacher’s Ass’n., 435 Mass, at 740.
The Appeals Court and the SJC have stressed the narrowness of the Court’s scope of review: “Unlike our review of factual findings and legal rulings made by a trial judge, [the Court is] strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing.” Boston Police Patrolmen’s Ass’n. v. Boston, 60 Mass.App.Ct. 672, 674 (2004), quoting from Lynn v. Thompson, 435 Mass. 54, 61 (2001), cert. denied, 534 U.S. 1131 (2002). The SJC continued in the latter case: “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference.” Id. at 62 (citation omitted). And in a footnote the court noted: “We reject the suggestion that we should enlarge the scope of our review of arbitration decisions in cases involving public employees.” Id. at n.13.
Application to the Facts
The College contends that the arbitrator exceeded his authority in violation of G.L.c. 150C, §11(a)(3) because the law prohibits institutions of public higher education from delegating dismissal decisions involving faculty members to the arbitration process. In this respect, despite the statutorily articulated public policy in favor of arbitration, the College submits that certain areas are reserved for the exclusive judgment of educational administrators and cannot be delegated by way of a collective bargaining agreement. They are thus “non-delegable.” Higher Education Coordinating Council/Roxbury Community College v. Massachusetts Teachers Ass’n/Massachusetts Community College Council, 423 Mass. 23, 27 (1996). This doctrine of nondelegability “rests largely on the notion that the quality of education provided to the Commonwealth’s [students] will depend, to some significant degree, on school administrators’ relatively unfettered discretion to make decisions concerning staffing and personnel in light of shifts in curricular emphasis, fluctuating student enrollment, and the availability of resources.” Id. at 28, 31 (applying the doctrine of nondelegability as it has been recognized in the elementary and secondary school setting to public institutions of higher education).
In determining the specific policy areas that the doctrine of nondelegability reserves for the judgment of educational administrators, the court looks to the legislative intent as embodied in the General Laws. Id. at 29. G.L.c. 15A, §22 explicitly states that “[e]ach board of trustees of a community college or state college shall be responsible for establishing those policies necessary for the administrative management of personnel, staff services and the general business of the institution under its authority. Without limitation upon the generality of the foregoing, each such board shall:... (c) appoint, transfer, dismiss, promote and award tenure to all personnel of said institution
Nevertheless, a public educational authority “may bind itself to follow certain procedures with respect to decisions committed to its exclusive authority, and a failure to follow those procedures may be the basis for an arbitrable grievance.” Higher Education Coordinating Council/Roxbury Community College v. Massachusetts Teachers Ass’n/Massachusetts Community College Council, 423 Mass, at 28. “In that way, school employees may be procedurally protected from ill-motivated discipline or termination, while the school maintains its substantive authority.” Bd. of Higher Educ. v. Massachusetts Teachers Ass’n, NEA, 62 Mass.App.Ct. 42, 49 (2004).
Here, under the CBA, the College bound itself to dismiss employees only upon a demonstration of just cause. As a result, the issue of whether just cause *705 existed for Professor Pause's termination was within the ambit of the arbitrator’s authority. See id. at 49 (finding that where a collective bargaining agreement prohibited an employee from being terminated without just cause, the decision whether termination without just cause took place falls within the ambit of the arbitrator’s authority). Thus, I conclude that the arbitrator’s conclusion as to the absence of just cause, on this record, must be respected.
The arbitrator’s award of reinstatement is also valid and within the arbitrator’s discretion. Along with an arbitrator’s discretion to find facts, construe the provisions of agreements, and determine potential violations, arbitrators also “have broad discretion in fashioning appropriate remedies” when violations and grievances are found. Wachusett Regional District School Committee v. Wachusett Regional Teachers Ass’n, 6 Mass.App.Ct. 851 (1978). In School Committee of Needham v. Needham Education Ass’n, 398 Mass. 709, 714 (1986), the Supreme Judicial Court upheld an arbitrator’s decision to reinstate a tenured teacher who had been dismissed from employment. The court held, “(w]e do not find the teacher’s reinstatement inappropriate. We regard as only logical that when the Legislature in G.L.c. 150E, §8, endowed the arbitrator with the broad authority to resolve grievances arising out of‘suspension, dismissal, removal or termination,’ it contemplated that the arbitrator might order reinstatement in certain cases. To hold otherwise would seriously impair the entire arbitration process.” Id.[1]
Certainly, G.L.c. 15A, §22 empowers officials at community and state colleges to appoint and dismiss members of their faculties. However, where such officials have negotiated away much of the substance of that authority, they are not in a position thereafter to assert that the grievance mechanism — itself a product of collective bargaining — is not lawfully available to review their decisions then circumscribed by the terms of a collective bargaining agreement. Here, the arbitrator could determine whether the College had just cause to terminate Professor Panse, order the College to pay Panse damages for its violation of the agreement, and order the College to reinstate Panse as a faculty member in the biotechnology department.
ORDER
For the foregoing reasons, the plaintiffs motion for judgment on the pleadings to vacate the arbitration award is DENIED, and the defendant’s motion to confirm the arbitration award is AFFIRMED. This case is further remanded to the arbitrator for a calculation of the amount of damages, if any, to be awarded to Panse for the College’s violation of the Collective Bargaining Agreement.

The courts have imposed limitations on certain reinstatement orders made by arbitrators. However, these limitations are imposed where an arbitrator “purports to designate griev-ants to positions they had not previously occupied and for which the school committee had not found them qualified.” School Committee of Boston v. Boston Teachers Union, Local 66, 25 Mass.App.Ct. 903, 904 (1987), quoting School Committee of Holbrook v. Holbrook Educ. Ass'n., 395 Mass. 651, 656 (1985). See also Higher Education Coordinating Council/Roxbury Community College v. Massachusetts, 423 Mass. at 31, Bd. of Educ. v. Massachusetts Teachers Ass'n., NEA, 62 Mass.App.Ct. at 49.