554                                    81 Mass. App. Ct. 554 (2012)

Massachusetts Community College Council *v.* Massachusetts Board of Higher Education.

### MASSACHUSETTS COMMUNITY COLLEGE COUNCIL *vs.* MASSACHUSETTS BOARD OF HIGHER EDUCATION/ROXBURY COMMUNITY COLLEGE.

No. 11-P-576.

Suffolk. November 7, 2011. - April 6, 2012.

Present: KANTROWITZ, FECTEAU, & CARHART, JJ.

Further appellate review granted, 462 Mass. 1108 (2012).

*Arbitration,* Confirmation of award, Collective bargaining. *Education,* Public colleges and universities. *Public Employment,* Collective bargaining. *Labor,* Arbitration, Collective bargaining, Public employment.

An arbitration award reinstating a faculty member to whom the defendant college had denied tenure and ordering another tenure review was an advisory one and not binding on the college, where statutory law gave the college administrators unfettered authority to award or deny tenure, which authority was not bound by the collective bargaining agreement, which clearly provided that arbitration awards involving tenure were nonbinding. [559-563]

CIVIL ACTION commenced in the Superior Court Department on November 10, 2009.

The case was heard by *Kimberly S. Budd, J.*

*Carol Wolff Fallon* for the defendant.

*Will Evans* for the plaintiff.

KANTROWITZ, J. In this case, involving a tenure decision at a local community college, we take the words written in the collective bargaining agreement that "[t]he granting or failure to grant tenure shall be arbitrable but any award is not binding" at their face value. As such, the decision of the arbitrator to reinstate the professor and order another tenure review was an advisory one and not binding upon the college.

*Background.* The Massachusetts Board of Higher Education/ Roxbury Community College (college) appeals a decision confirming an arbitration award issued to the Massachusetts Community College Council (association), on behalf of Virgilio

Acevedo, a faculty member to whom the college had denied tenure and, as a result, had given a one-year terminal contract. The award ordered Acevedo's reinstatement with full back pay and granted him a second chance to apply for tenure. At issue is whether the arbitration award can be binding in the face of statutory law and the collective bargaining agreement (CBA), which indicates that arbitration decisions involving tenure are nonbinding.

*Facts.* In 2001, the college hired Acevedo as an assistant professor in the social sciences department, a tenure-track position. The terms of Acevedo's employment were governed by a CBA between the college and the association.

Article IV of the CBA governed the "Rights and Responsibilities of the Employer." Article 4.01 provided that "[a]ll management's rights and functions, except those which are clearly and explicitly abridged by the specific terms of this Agreement, shall remain vested with the Employer." Article 4.01(2) stated that among these exclusive rights of the employer was the right "[t]o hire all employees, to determine their qualifications and the conditions for their continued employment or their dismissal or demotion, and to promote and transfer all such employees."

The tenure review process was laid out in Article XI of the CBA. Among other things, art. 11.03(A) provided that tenure "may be granted" to candidates by the employer upon the recommendation of the college's president. It also provided that a unit personnel practices committee (tenure committee) was to be formed every year to review tenure applications. Under art. 11.03(C)(3), the tenure committee was required to "review all relevant material within the individual's official personnel file and . . . forward recommendations for either tenure or a one (1) year terminal appointment to the appropriate Dean(s)." The dean would then review the recommendations of the employee's supervisor and the tenure committee and forward the dean's own recommendations to the president of the college, who would review all the recommendations and forward an official recommendation to the employer.[1]

Article XIII of the CBA provided the basis for annual evaluation of tenured and nontenured faculty. It contained criteria

---

[1] It appears thus that at all levels a significant degree of discretion was permitted; the president was free to deny tenure even in the face of contrary

designed "[t]o provide a basis upon which decisions shall be made concerning the reappointment, promotion, performance-based salary adjustments, tenure, sabbatical and professional leaves, and termination, dismissal and discipline of a unit member." Article 13.01(3). It provided that "[e]valuation of faculty members shall be uniformly applied and based upon total performance with primary emphasis on teaching effectiveness," and listed the criteria that could be considered in annually evaluating a faculty member's performance.[2] Article 13.02(A). Lastly, it listed the six-step procedure for the annual evaluation of faculty members: "(1) student evaluation; (2) course materials evaluation; (3) classroom observation evaluation; (4) student advisement and college service evaluation; (5) personnel file review; and (6) summary evaluation."[3] Article 13.02(B). Notably, although annual evaluations under Article XIII provided some basis for tenure decisions, they were not the exclusive criteria under which such decisions were to be made. See discussion of art. 11.03(C)(3), *supra.*

recommendations below. "[C]ourts must be extremely wary of intruding into the world of university tenure decisions. These decisions necessarily hinge on subjective [judgments] regarding the applicant's academic excellence, teaching ability, creativity, contributions to the university community, rapport with students and colleagues, and other factors that are not susceptible of quantitative measurement." *Berkowitz* v. *President & Fellows of Harvard College*, 58 Mass. App. Ct. 262, 269 (2003), quoting from *Kumar* v. *Board of Trustees, Univ. of Mass.*, 774 F.2d 1, 12 (1st Cir. 1985), cert. denied, 475 U.S. 1097 (1986) (Campbell, C.J., concurring).

[2] Such criteria included the "[d]evelopment and improvement of instructional methodology"; the "[e]stablishment of course objectives, course content and instructional activities"; the establishment of procedures for student evaluation; "[s]tudent advising competency and accessibility"; and college service in the form of serving as a student adviser, serving on different committees, and preparing grant proposals.

[3] "The President of the College or the President's designee shall after receipt and review of all the foregoing evaluation components develop a summary evaluation of each faculty member in an evaluation year. A copy of the summary evaluation shall be forwarded to the faculty member by February 1, and if requested, the President of the College or the President's designee shall meet and confer with the faculty member to discuss the reasons therefore. The faculty member shall have seven (7) working days to respond to the summary evaluation. The results of the components shall be applied in a uniform manner and shall be assigned the following weights: Student Evaluation 25%; Course Materials Evaluation 15%; Classroom Observation Evaluation 25%; Student Advisement Evaluation 10%; College Service Evaluation 10%; Personnel File Review 15%." Article 13.02(B)(6).

On October 6, 2006, Acevedo was notified that he would be considered for tenure. After a review process lasting from February until May, 2007, the president of the college recommended that the board of trustees deny tenure to Acevedo based on the recommendations of the tenure committee, the dean of liberal arts, and the vice-president for academic affairs. Among the reasons listed for the recommended denial were low student enrollment and high withdrawal rates from Acevedo's classes[4]; student evaluations of Acevedo that reflected "a level of teacher effectiveness that does not meet College expectations for teaching excellence,"[5]; and Acevedo's failure to adequately perform duties as a faculty adviser as required by the CBA.[6] On May 31, 2007, Acevedo was denied tenure and notified that he would instead receive a "terminal" contract for the 2007-2008 school year, after which he would not be rehired.

Acevedo filed a grievance challenging the decision, arguing that the college acted arbitrarily in its denial of tenure and its issuing of the terminal contract. The matter went to arbitration. Article X of the CBA allowed the association to initiate arbitration for grievances and provided that "[t]he decision or award

---

[4]In the dean's letter to the president of the college in support of the tenure committee's recommendation, he wrote: "For the past three years, history courses taught by Prof. Acevedo have attracted few students. For example, in the spring of 2003, he taught five (5) history courses with enrollment of only 74 students. In the fall of 2003, his four (4) history courses had 45 students, and in the spring of 2004, his four (4) history courses had 45 students. His five (5) history courses in the fall of 2004 had only 43 students, and in the spring of 2005, his four (4) history courses had only 23 students. By the fall of 2005, his four (4) history courses had just 27 students. Substantial number of students did not enroll in courses taught by Prof. Acevedo, as the figures above show. Substantial number of students, who registered for history courses taught by Prof. Acevedo generally dropped the courses after the first few days of classes."

[5]During his time at the college, Acevedo received overall student evaluations in his courses ranging from 2.21 to 4.23. Research by a member of the tenure committee showed the average score in the department to be 4.24.

[6]There was some dispute whether Acevedo fulfilled his advising duties. Acevedo's failure to perform duties as a faculty adviser was listed by the vice-president of academic affairs and the president of the college as one reason for the denial of tenure. Although Acevedo conceded that he did not advise all the students assigned to him, he maintained that students were free to seek out other advisers and did not always show up to their appointments. Additionally, an academic counselor wrote a letter of support for Acevedo stating that he was a willing student adviser.

of the arbitrator shall be final and binding." Article 10.06(A)(1). This provision was qualified and restricted however. "The granting or failure to grant tenure shall be arbitrable but any award is not binding." Article 10.06(F).

The issues before the arbitrator, as agreed upon by the parties, were:

> "1. Did the Employer violate the Collective Bargaining Agreement by the manner in which the Grievant, Professor Virgilio Fernando Acevedo, was reviewed and considered for tenure, denied tenure, and/or given a terminal contract, which ended his employment effective May 31, 2008?

> "2. If so, what shall be the remedy?"

The arbitrator concluded that the college improperly relied on factors beyond those permitted by the CBA when evaluating Acevedo for tenure, including enrollment and withdrawal rates,[7] rescinded evaluations,[8] and hearsay statements.[9] The arbitrator also criticized the tenure committee for misinterpreting student evaluations, drawing negative inferences from missing documents, and failing to apply a uniform review process to all tenure candidates. Above all, the arbitrator faulted the tenure committee because it "applied criteria not specifically noted in

---

[7]The arbitrator erroneously found, see note 10, *infra*, particular fault with the tenure committee's consideration of the low enrollment and high withdrawal rates in Acevedo's classes because they "are simply not listed contractual criteria. Nonetheless, they seem to have played a big role in the Committee's recommendation to deny tenure."

[8]The arbitrator faulted the tenure committee for considering a 2005 summary evaluation in which Acevedo's annual performance was judged to be "unsatisfactory" by a dean. Acevedo filed a grievance challenging this evaluation, which was later rescinded as part of a settlement. It was removed from Acevedo's personnel file after the tenure committee had already seen the evaluation and voted to deny tenure. A new vote was held in which the committee members were instructed not to consider the rescinded summary evaluation and they again voted to deny tenure to Acevedo, but the arbitrator found that "the horse was already out of the barn."

[9]The arbitrator found that "hearsay and chatter not included in the official file played a large role in the decision-making process." For example, the tenure committee discussed reports of "students crying over wanting to drop [Acevedo's] course." The committee members also interpreted a "request for information" in Acevedo's personnel file to be a "reprimand."

Article XIII as much of the basis for the[] decision to recommend denying tenure to Prof. Acevedo."[10]

The arbitrator ultimately found that "the tenure evaluation process for Prof. Acevedo was unreasonable, arbitrary and capricious and violated the contract." The arbitrator concluded that the only possible remedy was to return Acevedo to his position "with full seniority, benefits, and back pay." The arbitrator further ordered that Acevedo be given another opportunity to apply for tenure before another tenure committee. The judge granted the association's motion to confirm the award and denied the college's motion for judgment on the pleadings.

On appeal, the college claims that it was not bound by the arbitration award, which it viewed as merely advisory.[11] It argues that (1) enforcement of the award is precluded by the statutory nondelegability doctrine; (2) the CBA bars binding arbitration of tenure decisions; and (3) because the arbitration was not binding, the college had no obligation to follow the award and Acevedo had no statutory authority to seek its confirmation under G. L. c. 150C, § 10.

*Discussion.* The issue before us is whether the college is bound by the arbitrator's award, which effectively overturned its denial of tenure to Acevedo. The college claims that the judge erred in confirming a nonbinding award under G. L. c. 150C, § 10.[12] Conversely, the association essentially argues that the arbitration was binding in that it dealt with procedural, not substantive, issues, and therefore the judge was required to confirm the arbitrator's award under G. L. c. 150C.[13]

---

[10]The arbitrator erroneously found that "[i]f a matter is not on the list, it is not to be considered." The judge recognized the error, stating, "The language of Article XIII of the agreement does not appear to place a limitation on criteria considered." Nonetheless, the judge properly noted the limited standard of judicial review in the binding decisions of arbitrators, citing *Lynn* v. *Thompson*, 435 Mass. 54, 61 (2001).

[11]There is no evidence in the record that the college made clear from the outset that it was agreeing to arbitration only for an advisory opinion and not a binding award. Instead, the college relies on the CBA and G. L. c. 15A, § 22, to show that no arbitration award could be binding on the issue of tenure.

[12]Under G. L. c. 150C, § 10, the Superior Court must confirm arbitration awards made under collective bargaining agreements. However, G. L. c. 150C seemingly only applies to "binding arbitration," which the college claims this was not.

[13]Initially, the association argues that the award should be confirmed because

The Legislature has granted the exclusive power to award or deny tenure to school administrators under G. L. c. 15A, § 22, amended by St. 2008, c. 27, § 72,[14] which provides that "[e]ach board of trustees of a community college or state college shall . . . appoint, transfer, dismiss, promote and award tenure to all personnel of said institution." The statute gives "administrators of public colleges and universities 'unfettered authority to make decisions bearing on core issues of educational policy' in an effort to provide the most effective education for" students. *Board of Higher Educ.* v. *Massachusetts Teachers' Assn., NEA*, 62 Mass. App. Ct. 42, 49 (2004), quoting from *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers' Assn./Mass. Community College Council*, 423 Mass. 23, 29 (1996) (hereinafter *HECC* v. *MTA*). "This authority extends to decisions 'concerning staffing and personnel.' " *Ibid.*

Additionally, there are limitations on what a public college may delegate to arbitrators in collective bargaining agreements. "[I]t may not, for instance, delegate for decision by arbitration its authority to make 'specific appointment determinations, and decisions to abolish positions.' " *Ibid.*, quoting from *Boston Teachers Union, Local 66* v. *School Comm. of Boston*, 386 Mass. 197, 211 (1982).

However, a school "may bind itself to follow certain procedures with respect to decisions committed to its exclusive authority, and a failure to follow those procedures may be the basis for an arbitrable grievance." *Id.* at 28. See *School Comm. of Danvers* v. *Tyman*, 372 Mass. 106, 114 (1977). "Sorting out when arbitrators tread into the forbidden realm of nondelegable decision-making, or are instead properly enforcing agreed-to procedures, requires nuanced analysis on a case-by-case basis." *Massachusetts Bd. of Higher Educ.* v. *Massachusetts Teachers'*

---

the college failed to file a timely application to vacate. As the award was nonbinding, there was no need to move to vacate it.

[14]General Laws c. 15A, § 22, deals with community and State colleges. General Laws c. 71, conversely, deals with public school systems. As for the nondelegability doctrine, the Supreme Judicial Court has held that similar principles apply. *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers' Assn./Mass. Community College Council*, 423 Mass. 23, 27-31 (1996).

*Assn.*, 79 Mass. App. Ct. 27, 34 (2011). See *HECC* v. *MTA*, 423 Mass. at 31-32.

Here, the initial and essential question to be asked is whether the college, in fact, bound itself to follow a particular procedure. For that, we turn to the CBA. What distinguishes this case is art. 10.06(F), which specifies that "[t]he granting or failure to grant tenure shall be arbitrable but any award is not binding." The college points out that "[o]nly where a school committee has agreed to submit to binding arbitration has a court found that due to procedural violations a reinstatement order" is permissible. For example, in *School Comm. of W. Bridgewater* v. *West Bridgewater Teachers' Assn.*, 372 Mass. 121, 124-125 (1977), the court found that an arbitration award concerning a nondelegable right was appropriate where "the school committee agree[d] to such a procedure and further agree[d] to submit to binding arbitration any claim that it failed to adhere to those evaluation procedures."

The college maintains that it submitted to arbitration only for an advisory opinion and that there is no evidence that it willingly submitted to binding arbitration. In support, the college argues that the plain language of the CBA prohibits binding awards overturning the granting or denying of tenure. Under the CBA, the college claims that it bound itself to certain procedures, such as binding arbitration for most grievances, but specifically retained the right to make tenure decisions under art. 10.06(F). Although the association recognizes that an arbitrator cannot issue a binding tenure decision, it argues that there was fault with the process, which it asserts is arbitrable and binding, and not with the substantive decision, which, while arbitrable, is not binding.

The judge agreed with the association and emphasized that "the issue before the arbitrator was whether *the manner in which* Prof. Acevedo was reviewed and considered for tenure violated the agreement, *not* whether the tenure decision itself did so" (emphasis in original).[15] The association and the judge both distinguish between "substantive" and "procedural" tenure

---

[15]The decision of the arbitrator is silent on whether she believed her findings to be binding. The award, which made no mention of art. 10.06(F), stated that Acevedo "shall" be reinstated.

awards. The association claims that because the award merely addressed the procedure under which Acevedo was denied tenure rather than the substantive decision to deny him tenure, the award must be binding and it must be confirmed under G. L. c. 150C.

The problem with this interpretation is that the clear language of the CBA does not make such a distinction. The CBA does not differentiate between procedural and substantive rights. Rather, it clearly and unambiguously states that "[t]he granting or failure to grant tenure shall be arbitrable but any award is not binding." Further, it is difficult to see a meaningful distinction in this case between a grievance challenging the "manner" by which the college denied tenure and the subjective substantive decision to deny tenure itself. The central question presented in both scenarios is whether the college denied tenure.[16]

"A contract should be construed in such a way that no word or phrase is made meaningless by interpreting another word or phrase, because the interpretation should favor a valid and enforceable contract or lease rather than one of no force and effect." *Lexington Ins. Co.* v. *All Regions Chem. Labs, Inc.*, 419 Mass. 712, 713 (1995). To conclude that the award is binding merely because the arbitrator considered the procedure used by the college to reach its decision to deny tenure would essentially render art. 10.06(F) meaningless. By voiding the original tenure decision and ordering Acevedo's reinstatement, the arbitrator effectively overruled the college's decision to deny him tenure.[17]

The plain meaning of art. 10.06(F) is clear; arbitration decisions on tenure are not binding. If the parties to the CBA wished to make a distinction between procedure and substance they

---

[16]Under either scenario, the CBA here precludes binding arbitration when the issue is the denial of tenure.

[17]The association claims, without record support, that art. 10.06(F) is limited and only "allows a grievant to submit to nonbinding arbitration the question of whether the College should have granted tenure (or possibly denied tenure to another) based on a comparison between the grievant's personnel record and the records of faculty who were granted tenure. With such evidence before it, an arbitrator could make a substantive determination that the grievant should have been awarded tenure, given the College's treatment of other faculty members. In the present case, this issue was never posed to the Arbitrator nor was evidence presented comparing Prof. Acevedo's personnel record to those of faculty members granted tenure."

could have easily included such language. In this case, the arbitrator issued an award overriding the college's decision to deny tenure. We read art. 10.06(F) to mean that such a decision is not binding. As such, the judge below erred in confirming the arbitration award.

*Judgment reversed.*