NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-220

GREATER LOWELL TECHNICAL HIGH SCHOOL SCHOOL COMMITTEE

vs.

GREATER LOWELL REGIONAL TEACHERS ASSOCIATION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Greater Lowell Technical High School School Committee (school committee), the governing body of the Greater Lowell Technical High School (district), filed a complaint in the Superior Court seeking a permanent stay of an arbitration of a grievance filed by the defendant, Greater Lowell Regional Teachers Association (union).  See G. L. c. 150C, § 2. Following a hearing on cross motions for judgment on the pleadings, the judge allowed the school committee's motion, denied the union's motion, and entered a judgment permanently staying the union's request for arbitration.  On the union's appeal, we affirm.

Background.  As relevant here, the school committee and the union were parties to a collective bargaining agreement (CBA) from July 1, 2018 to June 30, 2021.  Since 2002, Robert Jones

has been employed as a teacher and is a union member. The district superintendent-director appoints all coaching positions on an annual basis. He appointed Jones as the varsity girls' softball coach for the school years 2015-2016, 2016-2017, and 2017-2018.

On May 24, 2018 an incident occurred during a varsity girls' softball game that resulted in the issuance of a letter of reprimand to Jones.[1] The union filed a grievance on Jones's behalf. The grievance was resolved in December 2018 when the parties entered into a memorandum of agreement (MOA). The MOA provided, inter alia, that the letter of reprimand would be removed from Jones's personnel file on March 31, 2019, provided that Jones "d[id] not engage in misconduct."

In February 2019, the district posted spring athletic coaching positions; Jones was one of five people who applied for the varsity girls' softball coaching position. Jones was interviewed by a panel of three school employees, one of whom witnessed the May 2018 incident. The panel unanimously recommended someone other than Jones for the position. Jones was not reappointed.

---

[1] The district received complaints that Jones screamed at students, called students names, and threatened to "body slam" students and other coaching staff.

2

In April 2019, the union filed a grievance on Jones's behalf challenging the interview process for the girls' varsity softball coach appointment.  The grievance was denied at each of the first four grievance levels on the grounds that the school committee did not violate the CBA.  On January 16, 2020, the union filed a demand for arbitration pursuant to level five of the CBA's grievance procedure, contending that the school committee violated the CBA "by the manner in which interviews were conducted and . . . by the non-selection" of Jones as the varsity girls' softball coach.  The school committee responded by filing a complaint in the Superior Court to stay arbitration arguing that the issue presented was a core managerial decision committed by statute to the superintendent-director, and thus not arbitrable.

Jones also filed a complaint with the Massachusetts Commission Against Discrimination (MCAD) for the school committee's failure to reappoint him to the girls' varsity softball coaching position.  In its submission to MCAD, the school committee acknowledged that Jones was not reappointed because of the incident that led to his reprimand.

Discussion.  We review de novo an order allowing a motion for judgment on the pleadings under Mass. R. Civ. P. 12 (c), 365 Mass. 754 (1974).  See Reilly v. Hopedale, 102 Mass. App. Ct. 367, 377 (2023).  The union contends that there is "no

3

meaningful distinction between the coach appointment process and the substantive decision," and thus the matter must be arbitrated.  The school committee responds that the interview process, and the union's request that Jones be appointed the coach, lies exclusively within the superintendent-director's decision-making authority pursuant to G. L. c. 71, § 47A (superintendent may contract to employ athletic coaches), and thus is not arbitrable.

Massachusetts recognizes a strong public policy in favor of arbitration of disputes.  See School Comm. Of Pittsfield v. United Educators of Pittsfield, 438 Mass. 753, 758 (2003).  For that reason, where a CBA contains an arbitration clause, "there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute" (quotation omitted).  Local No. 1710, Int'l Ass'n of Firefighters, AFL-CIO v. Chicopee, 430 Mass. 417, 421 (1999).  This is particularly true where the arbitration clause is broad.  See id.  However, "[e]ven a broad clause . . . does not make arbitrable questions that a statute or agreement places beyond the authority of arbitrators."  Lawrence v. Lawrence Patrolmen's Ass'n, 56 Mass. App. Ct. 704, 707 (2002).  Indeed, G. L. c. 150C, § 2 (b), provides that an arbitration proceeding

4

may be stayed if "there is no agreement to arbitrate, or . . . the claim sought to be arbitrated does not state a controversy covered by the provision for arbitration and disputes concerning the interpretation or application of the arbitration provision are not themselves made subject to arbitration."

Two provisions of the CBA are at issue here. Article II, section A, defines a grievance as a claim of "misrepresentation, inequitable application or violation of any provisions of the [CBA]," of a policy or practice of the school committee, or dissatisfaction with employment or working conditions. Article III section L of the CBA provides that coaching positions can be changed by administrative recommendation and that these assignments are "properly an administrative function and responsibility."

The union contends that Article II section A is broad, and therefore all disputes regarding it are subject to arbitration. The school committee responds that the appointment of an athletic coach is an administrative function pursuant to Article III section L, and that by statute, the superintendent-director is the appointing authority for athletic coaches. We agree with the school committee that Jones's non-selection as the girls' varsity softball coach is not arbitrable. See School Comm. of Natick v. Education Ass'n of Natick, 423 Mass. 34, 41 (1996) (athletic coach appointment is "statutorily created nondelegable

5

right of management [that] cannot be abrogated by the [CBA]," and therefore is not arbitrable).

The union's purported distinction between the appointment process and the appointment itself lacks a substantive practical effect as there is no discernible difference between the two. This is best illustrated by the initial grievance wherein the union requested that the interviews be redone, and that Jones be appointed the girls' varsity softball coach. Moreover, the record does not support the union's claim of an unfair process as nothing in the MOA or the timing of the interviews prohibited consideration of the incident that gave rise to the letter of reprimand. In fact, the interviews were conducted in February 2019, one month before the letter of reprimand was to be removed from Jones's personnel file. Regardless of how the union framed the issue, the superintendent-director's exercise of judgment in a nondelegable decision is not subject to arbitration. See Massachusetts Community College Council v. Massachusetts Bd. of Higher Educ./Roxbury Community College, 465 Mass. 791, 798 (2013) ("manner in which [the union member] was denied tenure does not change the fact that at bottom, the denial of . . . tenure was the issue)(quotations omitted);[2] Massachusetts Bd. of

_____

[2] We acknowledge that the motion judge relied on an Appeals Court case that was subsequently superseded by the Supreme Judicial Court. Compare Massachusetts Community College Council, 465 Mass. 791, with Massachusetts Community College Council v.

Higher Educ./Holyoke Community College v. Massachusetts Teachers Ass'n/Mass. Community College Council/Nat'l Educ. Ass'n, 79 Mass. App. Ct. 27, 34 (2011) (college administrator's exercise of judgment as to which candidate was best qualified not arbitrable).[3]

Judgment affirmed.

By the Court (Green, C.J., Blake & Henry, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  November 27, 2023.

---

Massachusetts Bd. of Higher Educ./Roxbury Community College, 81 Mass. App. Ct. 554 (2012). However, the subsequent opinion of the Supreme Judicial Court applied an essentially similar analysis to the question.  In any event, as our review is de novo, this does not impact our analysis.  See Reilly, 102 Mass. App. at 377.

[3] To the extent that the union contends the parties agreed to arbitrate the procedure for the appointment of athletic coaches, that contention is not supported by the record.  See CBA Article III, Section L.  The provision of the CBA cited by the union (Article X) does not apply to one-year appointments such as the coaching position at issue in the present case.

[4] The panelists are listed in order of seniority.