61 Mass. App. Ct. 105 (2004)                                    105

City of Boston, Boston Public Library v. Professional Staff Association.

CITY OF BOSTON, BOSTON PUBLIC LIBRARY vs. PROFESSIONAL
STAFF ASSOCIATION.

No. 02-P-1378.

Suffolk. December 10, 2003. - May 3, 2004.

Present: GELINAS, KAPLAN, & COHEN, JJ.

*Municipal Corporations,* Library, Collective bargaining. *Arbitration,* Confirma-
tion of award, Collective bargaining. *Labor,* Arbitration, Collective bargain-
ing, Public employment. *Public Employment,* Collective bargaining. *Con-
tract,* Municipality, Collective bargaining contract.

In an action to vacate or confirm the award of an arbitrator, the judge erred in
ruling that the arbitrator had exceeded his authority in deciding that an
advanced degree was required for a professional librarian position under
the relevant collective bargaining agreement, where, in the circumstances
of the case, the arbitrator could hold that the appointing authority would
have been arbitrary and capricious if it ignored the fact that a particular
candidate for the position lacked the required degree. [110-112]

In an action to vacate or confirm the award of an arbitrator arising from a
dispute over the hiring of a professional librarian allegedly in violation of
the relevant collective bargaining agreement, the judge correctly ruled that
the arbitrator could regard the "paving of the way" for the appointment of
the successful candidate for the position at issue (through the transfer and
rapid promotion to the professional grade level of a candidate who did not
receive the position at issue) as having constituted arbitrary action on the
part of the appointing authority, thereby justifying the revocation of the ap-
pointment [112]; moreover, the judge correctly concluded that the decision
whether to repost the position at the professional grade level or at a lower
grade level should be left to the appointing authority [112-113].

CIVIL ACTION commenced in the Superior Court Department on
January 25, 2002.

The case was heard by *Peter M. Lauriat,* J., on a motion for
judgment on the pleadings.

*Mary T. Sullivan* for the defendant.

*T. Martin Roach, Jr.,* for the plaintiff.

KAPLAN, J. *Summary.* An arbitrator's award revoked the ap-

pointment of a library assistant to the position of professional children's librarian on the ground that this candidate lacked the MLS (Master of Library Science) degree, a requirement, the arbitrator held, under the collective bargaining agreement. The Boston Public Library (BPL) brought the present action in Superior Court to vacate the award; the professional staff association (association) counterclaimed to confirm it. Upon the defendant's motion for judgment on the pleadings, the judge disapproved the award so far as it held the MLS degree was required, relying for this opinion, as he said, on "unambiguous" language of the collective bargaining agreement. The judge, however, approved the revocation of the appointment because of irregularities in the procedure and manner of the appointment also noted by the arbitrator. We disagree with the judge and hold, in agreement with the arbitrator, that possession of an MLS degree is required. We agree with the judge and the arbitrator about the irregularities in the appointment. (An issue of the "reposting" of the vacancy also arises.)

*The case.* The BPL, on June 26, 2000, posted an opening for a permanent position as a professional children's librarian, grade P2, at the Mattapan branch library. Ms. Tammy Coney, a professional children's librarian, grade P1, serving at the Grove Hall branch library and having the academic qualifications of B.A. and MLS degrees, applied for the Mattapan position. She was interviewed by Ms. Karen Duff, coordinator of children's and young adult library services, and Ms. Cynthia Dromgoole, then recently appointed Mattapan branch librarian after service at the Brookline branch library. Coney was rejected in August, 2000. The reason given was that she did not have the desired supervisory ability based on management experience.

Ms. JoAnn Henry, a library assistant, also applied for the Mattapan position. She had served as library assistant for many years and in her service at Brookline had been a colleague of Dromgoole. Henry was interviewed by Duff and Dromgoole and on September 28, 2000, was hired to assume the position at Mattapan, now downgraded to P1. At the time, Henry was working toward, but had not achieved, a B.A. degree, and of course did not possess an MLS degree.

The Henry hiring came promptly to the attention of Ms. Ellen

Graf, president of the association, and she expressed outrage at the breach of the rule, as she understood it, that a professional librarian must have qualified by attaining an MLS degree.

Coney, who had been rejected for Mattapan in August, 2000, was transferred to the Codman Square branch library in September, 2000, as a professional children's librarian P1, and was then promoted to the P2 level in late October, about three weeks after the Henry hiring. Henry is taken to have commenced work at Mattapan on October 10, 2000.

Between September 28 and October 10 representatives of the association and the BPL conferred but nothing came of the discussions, and on October 23, 2000, the association filed a grievance against the Henry hiring. After exhaustion of grievance procedure, the matter reached the stage of arbitration.

The issue framed for arbitration was:

> "Did the City of Boston violate the collective bargaining agreement by appointing JoAnn Henry to the position of Children's Librarian (P1) at the Mattapan Branch Library? If so, what shall be the remedy?"

The arbitrator heard the parties at considerable length. As noted, he answered the first question yes on the ground that Henry did not possess an MLS degree. In the present action to vacate or confirm the award, the judge answered the question yes on the ground of the irregular manner of the appointment, but disapproved the MLS ground. We examine these grounds.

### *Requirement of MLS Degree*[1]

*Arbitrator's position.* The arbitrator held the Henry hiring to be in violation of the collective bargaining agreement as Henry did not satisfy the academic requirement of an MLS degree, and was not enrolled in the BPL's "Pre-Professional" program (see Appendix).

1. By Article I, the agreement covers employees in both the

---

[1]As we note toward the end of the opinion, an arbitrator's interpretation of an agreement would ordinarily be confirmed with little discussion even if seen to be the result of erroneous analysis. We engage in more extended discussion here because the judge reversed the arbitrator on the main ground in the case, and on the basis of the supposed "unambiguousness" of the collective bargaining agreement which had not been squarely dealt with by the arbitrator.

pre-professional and the professional services. Then comes Article VI ("Employment Status"), which in section 2 ("Permanent Employment") (text in Appendix) describes how a pre-professional may become a professional P1. It is a condition of advancement to the latter status that the pre-professional shall have the MLS degree. Paragraph (B) of section 2 makes the point with particular clarity where it provides that a pre-professional may be tentatively selected to a professional P1 position when in attendance at library school during the three-month period preceding his or her completion of the MLS degree. If the degree is earned as expected the P1 appointment becomes permanent; but if the pre-professional fails to complete the degree in the three months, the opportunity is lost, though the BPL may consider "extenuating circumstances" and grant a reasonable period of grace for completion of the degree.[2]

2. The arbitrator answered a possible contention drawn from the job description for professional children's librarian (P2) (Appendix) that the MLS degree is not crucial and other experience may be accepted as a substitute.

The minimum qualifications mentioned in the job description are the B.A. and MLS degrees. Then follows in the same paragraph: "In exceptional instances, specialized education, training and/or experience may be substituted for part or all of the educational requirements." (The second paragraph refers to "ability to do the work," a separate consideration.)

The arbitrator on the record made by the association accepted that the term "specialized education" appearing in the quoted minimum qualifications refers to "Ph.D. degrees and unique skills such as those possessed by individuals having Ph.D. degrees." Thus Karon Shaft qualified with a Ph.D. in art history

---

[2]The record illustrates the pre-professional system with the case of David Huson who, after twenty-five years' service as library assistant, entered that system but did not reach the MLS degree, and thereby failed of attaining professional rank. The record refers to a number of library assistants failing to advance because of the critical MLS requirement. Of course there were also successes in the transit from library assistant to professional librarian by the pre-professional route to the MLS.

It is inferable that a candidate presenting himself or herself for a professional librarian's position, without having come through the pre-professional process, must also satisfy the academic requirement.

and Stuart Walker in conservation. The association asserted, referring to a thirty-year period, that, apart from the "exceptional instances" in the sense of the art history and conservation cases, there was no case of the appointment of a person as a professional librarian who did not possess the MLS degree. According to the arbitrator, Duff herself "testified that all professional librarians have a bachelor's degree, an MLS degree or an advanced degree in an area of specialty pertinent to professional library work."

The arbitrator went on to assume, for argument's sake, contrary to the foregoing reading of the job description, that "exceptional instances" had a broader scope of meaning. Even on that assumption he found the appointment of Henry could not be supported. Without derogating from Henry's services as a library assistant, there was no showing of capacities sufficient to excuse compliance with the usual academic requirement of the MLS degree. Nor was there a showing of inability on the BPL's part to find candidates who could qualify academically. Such difficulties in filling vacancies as had been encountered in the past were due, at least in part, to the BPL's own lethargy in recruitment efforts. Indeed, Mr. David Young, director of human resources, conceded that one of his goals in assuming his new post was to strengthen those efforts.

As to a question raised whether the hiring of Henry, an African American, could be viewed as a step of affirmative action, the collective bargaining agreement in Article II ("Non-Discrimination") states, "The Municipal Employer and the Association agree to apply the concept of Affirmative Action consistent with the terms of this Agreement." But there was no such active program at the BPL at the time and the BPL did not attempt to justify the Henry appointment on such a basis.

3. Article XI ("Vacancies"), section 2 ("Method of Selection") (see Appendix) dealt with selection of employees for "promotion or lateral transfer" which are to be made on the basis of "qualifications and ability." After providing that in cases where, as between candidates, qualifications and ability are relatively equal, seniority is to control, section 2 states: "The Appointing Authority shall be the sole judge of qualifications and ability, provided that such judgment shall not be

exercised arbitrarily, capriciously, or unreasonably" (and disputes are subject to the grievance and arbitration procedure). It is not clear whether section 2 with the "sole judge" provision could extend to such a case as the proposed appointment of Henry, a library assistant, to professional librarian status,[3] but if it could so extend, the caution against exercise of judgment arbitrarily, etc., would have to be considered. The arbitrator could well rule that the judgment in Henry's case was exercised arbitrarily, a conclusion readily justified by the emphatic MLS requirement with its historic application and the absence of factors counseling a singular deviance in Henry's case.

Finally, we need mention Article V ("Management Rights"), section 1 (see Appendix), which safeguards the "exclusive right of the Appointing Authority to issue reasonable rules and regulations" for the conduct of his or her department. If this statement can possibly bear on the instant case, we note the final clause of section 1, "provided that such rules and regulations are not inconsistent with the express provisions of this Agreement," which would include, notably, the MLS requirement.

*Judge's position.* According to the judge, the BPL did not have to abide by and enforce the MLS requirement; it could accept such experience as Henry's in lieu of the MLS. For this opinion, the judge relied on a portion of the next to last sentence of Article XI, section 2, and a sentence of the job description, which he called "unambiguous"; when the arbitrator went beyond the unambiguous words, the judge said, he "exceeded [his] powers" under G. L. c. 150C, § 11(a)(3),[4] and the award to that extent should not hold.

As to the former reference in Article XI, section 2, the judge sees no ambiguity in the expression "The Appointing Authority shall be the sole judge of qualifications and ability" and he appears here to disregard the balance of the sentence, "provided that such judgment shall not be exercised arbitrarily, capri-

---

[3]The appointment was spoken of as "external" and so questionably a "promotion" or "lateral."

[4]Chapter 150C, § 11(a), provides: "Upon application of a party, the superior court shall vacate an award if . . . (3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law."

ciously, or unreasonably." As indicated above, in the circumstances of the case the arbitrator could hold (and did) that the appointing authority (BPL) would have been arbitrary, capricious, etc., if it accepted such experience as Henry's and passed over the flaw of the absence of the academic requirement.

As to the sentence from the job description, "In exceptional instances, specialized educational, training and/or experience may be substituted for part or all of the educational requirements," the arbitrator could hold (and did) that the long-term usage and practice (as summarized by Duff) established the meaning.

It was by a process of fastening upon the words themselves to the exclusion of all else that the judge was able to conclude that the expressions involved were "unambiguous" (and inconsistent with the award). But the meaning of words turns on considerations of context — in the case of the particular words of Article XI, section 2, on adjacent words and the relation of all to other features of the collective bargaining agreement; in the case of the words in the job description, on their actual past usage and application, see *Duxbury* v. *Duxbury Permanent Firefighters Assn., Local 2167*, 50 Mass. App. Ct. 461, 464-465, 467 (2000). (Regarding the significance of context, we quote in the margin a helpful passage from the Restatement [Second] of Contracts.[5]) The meaning emerging from a contextual approach may be clear or less than clear, it may be subject to more than one interpretation: in an arbitral

[5]Comment b to § 212(1) of Restatement (Second) of Contracts (1981) reads thus: *"Plain meaning and extrinsic evidence.* It is sometimes said that extrinsic evidence cannot change the plain meaning of a writing, but meaning can almost never be plain except in a context. Accordingly, the rule stated in Subsection (1) is not limited to cases where it is determined that the language used is ambiguous. Any determination of meaning or ambiguity should only be made in the light of the relevant evidence of the situation and relations of the parties, the subject matter of the transaction, preliminary negotiations and statements made therein, usages of trade, and the course of dealing between the parties. See §§ 202, 219-23. But after the transaction has been shown in all its length and breadth, the words of an integrated agreement remain the most important evidence of intention. Standards of preference among reasonable meanings are stated in §§ 203, 206, 207."

Section 212(1), referred to, states: "The interpretation of an integrated agreement is directed to the meaning of the terms of the writing . . . in the light of the circumstances."

setting, the interpretation adopted by the arbitrator will be controlling. "The role of courts in reviewing an arbitrator's award is limited. G. L. c. 150C, § 11. We do not, and cannot, pass on an arbitrator's alleged errors of law and, absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation. The fact that an arbitrator has committed an error of law does not alone mean that he has exceeded his authority." (Citations omitted.) *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187-188 (1984). See *Lyons* v. *School Comm. of Dedham*, 440 Mass. 74, 79 (2003). In the present situation, the emergent meaning is, indeed, pretty clear, it has been adopted by the arbitrator, and we would reach it even upon independent consideration.

### Irregularities in Appointment

The arbitrator remarked upon the fact of the appointment of Coney to the Codman Square opening, and her rapid promotion to the P2 grade, when she had been turned down for Mattapan. This turnabout, the arbitrator wrote, "supports the [association's] contention that the BPL was paving the way for Ms. Henry's appointment" at Mattapan. The arbitrator also remarked on the participation of Dromgoole, Henry's supervisor at Brookline, in the hire, without "input" from the office of Young, as would be expected in the usual course, and the further deviation from usual procedures by placing her at a step six pay level — the normal procedure is to start entry level employees at no more than step four.

The judge evidently thought the arbitrator could regard the "paving the way" as arbitrary action justifying revocation of the appointment and on such a matter the arbitrator's view would have to be respected. We do not disagree with the judge on this point.

### Reposting

Henry was hired as a professional children's librarian P1 for

a position that had been posted as P2.[6] According to Article XI ("Vacancies"), section 6 ("Filling Vacancies at Lower Levels") (see Appendix), as read by the judge as well as the arbitrator, this move ordinarily requires "repost[ing] at the lower level," which could bring in other bidders for the position. The arbitrator's award called for reposting at the P2 grade, and if that failed, further reposting at P1 grade. The judge thought this administrative point should be left to the BPL after Henry's appointment was revoked. We agree with the judge. Much time has elapsed since the Henry appointment and we do not know the current situation at Mattapan or elsewhere.

## *Conclusion*[7]

The judgment of the Superior Court appealed from is modified to read as follows: The arbitrator's award dated January 4, 2002, is *confirmed* so far as it orders the Library to vacate the appointment of Ms. Henry as a professional children's librarian, and so far as it indicates one cannot fill the position without possessing an MLS degree (or qualifying through the pre-professional program). The award is *vacated* so far as it requires reposting; this matter is left to decision by the Library in accordance with the provisions of the collective bargaining agreement.

*So ordered.*

---

[6]The record indicates that Coney had been willing to take the Mattapan position at the P1 grade (a lateral transfer for her) and could compete well against Henry on that level if the vacancy were so "reposted" (see *infra*). This became irrelevant with Coney's P2 promotion at Codman Square, leaving the way open to Henry at Mattapan.

[7]The award as framed by the arbitrator, and the judgment as entered by the judge, are set out in the Appendix.

APPENDIX.

## COLLECTIVE BARGAINING AGREEMENT

### ARTICLE V
### MANAGEMENT RIGHTS

*Section 1.*

The Municipal Employer shall not be deemed to be limited in any way by this Agreement in the performance of the regular and customary function of municipal management, and reserves and retains all powers, authority and prerogatives, including without limitation, the exclusive right of the Appointing Authority to issue reasonable rules and regulations governing the conduct of his/her department, provided that such rules and regulations are not inconsistent with the express provisions of this Agreement.

### ARTICLE VI
### EMPLOYMENT STATUS/DISCIPLINE & DISCHARGE

*Section 2: Permanent Employment*

(A) Employees in the Pre-Professional Library Service are considered to be conditional employees until they graduate from library school. Employees in the Pre-Professional Library Service shall be granted six (6) months to obtain a professional service position from the date of the employee's graduation from library school. The Library will endeavor to continue the Pre-Professional program.

(B) All employees in the Pre-Professional Library Service are eligible for application and selection to P1 positions pursuant to Article XI of this Agreement while in attendance during the three (3) months prior to completion of their MLS Degree at library school. Applications for such positions must be accompanied or immediately followed by a letter from the graduate library school confirming when the degree requirements will be completed. Permanent appointment is contingent upon successful completion of the MLS requirement. The employee's seniority date in the P1 position shall be as of the date of acceptance into the position.

In the event that a Pre-Professional is appointed to a P1 position and fails to complete the MLS Degree as required, the Library shall return that

employee to a Pre-Professional position if such a vacancy exists, or if no such vacancy exists, shall terminate that employee. The Library may consider extenuating circumstances surrounding the employee's failure to complete the MLS Degree, and may elect to grant a reasonable period of time prior to exercising its right to remove the employee from the P1 position. The Library's decision regarding extenuating circumstances shall not be arbitrary or capricious.

## ARTICLE XI
## VACANCIES

### Section 2: Method of Selection

The selection of an employee for promotion or lateral transfer shall be made on the basis of qualifications and ability. Where qualifications and ability are relatively equal, seniority as defined in the following Section 3 shall be the determining factor except for the situation where an applicant for lateral transfer and an applicant for promotion are determined to have equal qualifications and ability, in which case the former shall be given preference regardless of seniority. In the event that the senior applicant for the position is not selected, the Appointing Authority shall, upon written request by the Association, submit reasons in writing why said senior employee was not selected to fill the position. The Appointing Authority shall be the sole judge of qualifications and ability, provided that such judgment shall not be exercised arbitrarily, capriciously, or unreasonably. Any dispute hereunder shall be subject to the grievance and arbitration procedure.

### Section 6: Filling Vacancies at Lower Levels

Where no qualified applicant to fill an existing vacancy is found within the Library system and the Library decides to fill the vacancy with a lower level position, the vacancy shall be reposted at the lower level.

The applicant selected at the lower level shall be reviewed by the immediate supervisor outside the bargaining unit, the Division Head, and the Assistant to the Director of Personnel at the end of six months and twelve months to see if the employee is performing at the level of the original vacancy. If at the end of six months or twelve months the employee is found to be performing at the higher level, the employee shall be reclassified to that higher level of the original vacancy.

Where the employee has been denied such reclassification at the end of 12 months, he/she may use the compensation grade appeal procedure and

arbitration to determine whether he/she in fact is performing at the higher level of the original vacancy.

## *[JOB DESCRIPTION]*

[The Professional Children's Librarian II ($P_2$) (Branch Library) job description provides in pertinent part as follows:]

### *Basic Function*

Under supervision and within the framework of the Library's policy and practices, to assume responsibility for the effective execution of the Library's programs of service to a diverse population characteristic to an urban setting with emphasis on children and to perform professional work requiring application of substantial professional knowledge and experience.

[The Minimum Qualifications of the Children's Librarian II position are as follows:]

A bachelor's degree from a recognized college or university.

A master's degree in library science from an accredited library school. Storytelling courses and/or experience desirable. In exceptional instances, specialized education, training and/or experience may be substituted for part or all of the educational requirements.

Two years of pertinent professional library experience or any equivalent combination of education, experience and training sufficient to indicate ability to do the work.

## *[ARBITRATOR'S] AWARD*

The grievance is arbitrable and it is upheld. The Boston Public Library shall vacate the appointment of Ms. Henry as a Professional Children's Librarian I ($P_1$)[1]. The position shall be internally reposted as a Professional Children's Librarian II ($P_2$) at the Mattapan Branch. If no qualified applicant is found to fill the existing vacancy within the Library system and the Library decides to fill the position with a lower level position, ($P_1$), the vacancy shall be reposted at the $P_1$ level, pursuant to the terms of Article XI Section 6.

---

[1] Neither party seeks the termination of Ms. Henry as a BPL employee nor does the arbitrator so order. However, she cannot continue to fill a Professional Librarian position without an MLS degree or by qualifying for the contractual Pre-Professional Program.

*[SUPERIOR COURT] JUDGMENT ON THE PLEADINGS*

The arbitrator's award dated January 4, 2002 in the present case is CONFIRMED insofar as it requires the Library to vacate the appointment of Ms. Henry and to repost the position of a Professional Children's Librarian pursuant to the parties' Agreement, should it decide to do so. The arbitrator's award is VACATED insofar as it requires a Children's Librarian to possess a M.L.S. or a PhD degree, and insofar as it requires the Library to repost the Children's Librarian position at a P-2 level.