MASSACHUSETTS BOARD OF HIGHER EDUCATION/HOLYOKE
COMMUNITY COLLEGE *vs.* MASSACHUSETTS TEACHERS
ASSOCIATION/MASSACHUSETTS COMMUNITY COLLEGE
COUNCIL/NATIONAL EDUCATION ASSOCIATION.

No. 10-P-504.

Suffolk. December 3, 2010. - March 11, 2011.

Present: McHugh, Meade, & Milkey, JJ.

*Arbitration,* Judicial review, Award, Authority of arbitrator, Arbitrable question, Collective bargaining, Vacating award, Damages. *Labor,* Arbitration, Public employment, Collective bargaining. *Public Employment,* Collective bargaining.

Discussion of the applicability of the principle of nondelegability in judicial review of arbitration awards in the context of community college administration decisions regarding faculty appointments and faculty search processes. [31-34]

This court concluded that the issue whether a college administration erred in exercising its judgment as to which candidate was best qualified for appointment to the faculty is not an arbitrable issue. [34-35]

This court affirmed so much of an arbitrator's decision as determined that a college violated its collective bargaining agreement by selecting a candidate for a faculty appointment who did not meet the minimum requirements set forth in the posting [35-36]; however, this court reversed that portion of the award that ordered that the college appoint an unsuccessful candidate to the faculty, where the arbitrator lacked authority to grant such relief, given that it would intrude directly on the appointment authority left to the exclusive purview of the college administration [36-38].

An arbitrator's award ordering the payment of damages to a candidate not selected by a college administration for a faculty appointment, in the amount of the full salary of the position for as long as the position continued to exist, plainly exceeded the arbitrator's authority, where those damages would have the effect of compelling reinstatement; remand to the arbitrator was therefore required for a determination of what, if any, damages might be appropriate. [38]

CIVIL ACTION commenced in the Superior Court Department on April 2, 2009.

The case was heard by *Elizabeth M. Fahey,* J.

*Will Evans* for the defendant.

*Carol Wolff Fallon* for the plaintiff.

MILKEY, J. In 2006, Holyoke Community College (the college) posted a position for an assistant professor of nutrition. Elizabeth Hebert, who many years earlier had been a tenured faculty member at the college, received an initial interview for the position. However, she did not advance to the final round, and the college eventually hired one of the three candidates who did. Based on a grievance that Hebert's union, Massachusetts Teachers Association/Massachusetts Community College Council/National Education Association (union), pressed on her behalf, an arbitrator ruled that the college violated its collective bargaining agreement by choosing its preferred candidate over Hebert. He ordered the college to appoint Hebert to the posted position with full back pay, or to pay broadscale damages on an ongoing basis. A Superior Court judge vacated the arbitrator's award, and the union seeks to have it reinstated on appeal. We agree with the judge that the arbitrator exceeded his authority in some respects, but we conclude that the case must be remanded for additional proceedings.

*Background.*[1] Hebert has a "master's degree in food and nutrition."[2] In 1981, she began working as a "program coordinator" in the dietetic technology program at the college. She was promoted to assistant professor in 1986, and she obtained tenure in 1988. In May of 1989, the college eliminated the entire dietetic technology program because of severe budgetary issues, and Hebert therefore lost her position. The college offered her a "retraining sabbatical" designed to qualify her for a position in the biology department. She initially accepted that offer but eventually decided that she did not want to leave the nutrition field. Therefore, she resigned her position at the college.[3] However, at many points over the ensuing years she taught courses at the college as an adjunct professor.

On January 6, 2006, the college posted the assistant professor position in nutrition. The posting listed various "required" and "preferred" qualifications. Among the required qualifications was

---

[1] The facts are taken from the arbitrator's findings.

[2] The arbitrator's decision does not identify at which university Hebert earned her master's degree, and nothing elsewhere in the record reveals this.

[3] As the arbitrator noted, there is a confusing paper trail as to whether Hebert's resignation became effective in December of 1989 or October of 1990. Nothing turns on this fact.

that the candidate have a "[m]aster's degree in Nutrition or closely related field."

Hebert applied for the posted position, and she was among the five candidates asked to make presentations to the search committee. The committee recommended three finalists, including Hebert. In the committee's report, the chair had particularly positive things to say about Hebert's candidacy, referring to her as "exceed-[ing] all candidates [in the pool] in required and preferred job qualifications." However, the college decided not to hire from the existing pool. Instead, it reposted the position on December 21, 2006. Although the new posting was slightly modified, it continued to list having a master's degree as a "required" qualification. The membership of the search committee had changed in the intervening months; for example, the chair, who had been a booster of Hebert's in the earlier process, no longer was on the search committee.

Hebert reapplied, and, as before, made the search committee's initial cut and was brought in for an interview. The reconstituted search committee asked each candidate a set series of questions, which was a different format than had been used in the earlier search. Hebert found the process "very strange," and she acknowledged to the arbitrator that it "threw her a bit." She did not advance further in the process.

The search committee chose three finalists, including Clement Ameho, who held a Ph.D. in nutrition from Tufts University; Laura Hutchinson, a Ph.D. candidate at the University of Massachusetts who had completed her course work and comprehensive examinations, but had not yet finished her doctoral dissertation; and Kim Teupker, who held a master's degree in nutrition and who — in the arbitrator's words — had "professional and teaching experience similar to Hebert's." The college eventually hired Hutchinson for the position.[4]

On May 18, 2007, the day that Hebert learned that she was not a finalist, she filed a grievance claiming that the college had

---

[4]According to a document included in the record appendix, the college offered the position to Hutchinson only after Ameho turned it down. The arbitrator does not mention that document, which was filed in Superior Court as an attachment to the college's complaint for modification of the arbitration award, and it is not clear whether the document, or the underlying facts suggested by it, were before him.

violated the collective bargaining agreement then in effect by having "acted in an arbitrary, capricious, and unreasonable manner in failing to offer her a second interview." After the college denied the grievance on multiple grounds and mediation proved unsuccessful, the union requested that the dispute be arbitrated.

The assigned arbitrator held a hearing on November 20, 2008, and he ruled in Hebert's favor by a decision dated March 2, 2009. With the college having completed its hiring process after Hebert had filed her grievance, the arbitrator framed the issues before him as follows:

"Is the grievance of Elizabeth Hebert arbitrable?

"If so, did the College violate the parties' collective bargaining agreement by failing to appoint the grievant to a full-time faculty position in the Nutrition Department?

"If so, what shall be the remedy?"

The arbitrator determined that the grievance was arbitrable, because, having lost her teaching position two decades earlier, Hebert was a "retrenched" union member who enjoyed certain preferences under the collective bargaining agreement.[5] He concluded that Hebert no longer was entitled to some of these preferences, either because of the sheer passage of time or because she had not followed required notification procedures in the interim.[6]

However, the arbitrator found that Hebert still was entitled to a preference with regard to article XVI of the collective bargain-

---

[5]The collective bargaining agreement defined "retrenchment" as "the discontinued employment of a unit member prior to the expiration of that unit member's term of appointment through no fault or delinquency of that unit member, pursuant to Article XIX [the provisions applicable to retrenchment]."

[6]Article XIX prohibits the college from filling a retrenched member's position with someone else. That prohibition lasts for a period of four years, and even if the posted position were considered the same as the one from which Hebert was laid off, almost two decades had elapsed in the interim. Different sections of article XIX provide a retrenched unit member with fairly strong preferences for being "recall[ed]" for other positions at the college. The arbitrator concluded that Hebert was not eligible for these preferences because she had not complied with annual notification requirements that he concluded were prerequisites to being put on the "recall list."

ing agreement, the general provision governing the "filling of vacancies." Section 16.02 of the collective bargaining agreement requires the college president or designee to fill any vacancies with unit members within the college "when in the professional judgment of the President of the College or designee such unit members are the best-qualified applicants." It further states that retrenched unit members must be given first preference "[i]f the President of the College or designee determines that two (2) or more applicants are equally best qualified."

After reviewing their respective qualifications, the arbitrator found Hebert better qualified than Hutchinson, and "[a]t the very least, Hebert should have been found [by the college] to be equally qualified as Hutchinson." Indeed, he determined that Hutchinson was per se unqualified given that, although she had completed her doctoral course work and examinations, she did not possess a master's degree. Based on this, the arbitrator concluded that, in choosing Hutchinson over Hebert, the college failed to give Hebert preference as a "retrenched faculty member" and thereby violated the collective bargaining agreement.

As to remedy, the arbitrator ordered the college to hire Hebert for the posted position (plus back pay). Recognizing doubt as to whether he could order the college to hire Hebert, the arbitrator further ordered that, in the event that his preferred remedy was struck, the college must pay Hebert the full salary of the position for as long as that job continued to exist. A Superior Court judge summarily vacated this award, stating: "Hebert is not entitled to reinstatement and not entitled to retrenchment. Where it is clear that the arbitrator exceeded his authority, and [his award] is against public policy, his decision must be VACATED."

*Discussion. Scope of review and the principle of nondelegability.* Judicial review of arbitration awards is extremely limited. We must accept an arbitrator's factual findings and legal conclusions regardless of their validity. *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990) ("Absent fraud, errors of law or fact are not sufficient grounds for setting aside an award"). "However, the question whether an arbitrator exceeded his or her authority is always subject to judicial review." *Board of Higher Educ.* v. *Massachusetts Teachers Assn., NEA*, 62 Mass. App. Ct. 42, 47 (2004), citing *School Comm.*

*of W. Springfield* v. *Korbut,* 373 Mass. 788, 792 (1977). See G. L. c. 150C, § 11(*a*)(3), inserted by St. 1959, c. 546, § 1 (requiring judge to vacate arbitrators' awards if "the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law").

An arbitrator exceeds his authority when he intrudes upon decisions that cannot be delegated, but that are instead left by statute to the exclusive managerial control of designated public officials. *Higher Educ. Coordinating Council/Roxbury Community College* v. *Massachusetts Teachers' Assn./Mass. Community College Council,* 423 Mass. 23, 27-31 (1996) (hereinafter *Roxbury Community College*). "This gloss on public sector collective bargaining statutes is deemed necessary in order that the collective actions of public employees do not distort the normal political process for controlling public policy." *Boston Teachers Union, Local 66* v. *School Comm. of Boston,* 386 Mass. 197, 211 (1982). However, the principle of nondelegability is to be applied only so far as is necessary to preserve the college's discretion to carry out its statutory mandates. Thus, although the principle applies to the administration of community colleges, "unless the arbitrator's decision infringed on an area of educational policy reserved for the exclusive judgment of the administrators of the college, it cannot be disturbed." *Roxbury Community College, supra* at 27.

Section 22 of G. L. c. 15A, inserted by St. 1991, c. 142, § 7, specifically delegates to the community college administrators the responsibility to "appoint, transfer, dismiss, promote and award tenure to all personnel of said institution."[7] Few issues are as central to setting educational policy as choosing which faculty members to hire or promote. See *id.* at 28 ("It has been observed that '[t]he success of a school system depends largely on the character and the ability of the teachers. Unless a school committee has authority to employ and discharge teachers it would be difficult to perform properly its duty of managing a

---

[7]Section 22 delegates such decisions to the respective college's board of trustees, although — as was the case here — the decisions are in practice carried out by the college's president and his delegees subject to the board of trustees' review. For the sake of simplicity, we will hereinafter refer to the "college administration."

school system' "), quoting from *Davis* v. *School Comm. of Somerville,* 307 Mass. 354, 362 (1940). Not surprisingly, the Supreme Judicial Court long has recognized that "specific appointment determinations" cannot be delegated to an arbitrator. *School Comm. of Holbrook* v. *Holbrook Educ. Assn.,* 395 Mass. 651, 655 (1985), quoting from *Boston Teachers Union, Local 66* v. *School Comm. of Boston, supra.* See *School Comm. of Boston* v. *Boston Teachers Union, Local 66,* 25 Mass. App. Ct. 903, 904 (1987) (recognizing that school committee's duty "to ascertain the qualifications of teachers to be appointed to positions" is "nondelegable").[8]

These principles apply with at least equal force in the context of higher education. *Roxbury Community College, supra* at 31.[9] The need for college administrators to be able to exercise judgment in conducting faculty searches is reinforced by the discretionary nature of evaluating the candidates. Hiring faculty, like granting tenure, "necessarily hinge[s] on subjective [judgments] regarding the applicant's academic excellence, teaching ability, creativity, contributions to the university community, rapport with students and colleagues, and other factors that are not susceptible of quantitative measurement." *Berkowitz* v. *President & Fellows of Harvard College,* 58 Mass. App. Ct. 262, 269 (2003), quoting from *Kumar* v. *Trustees, Univ. of Mass.,* 774 F.2d 1, 12 (1st Cir. 1985), cert. denied, 475 U.S. 1097 (1986) (Campbell, C.J., concurring).

While a college cannot delegate specific appointment decisions, it can bind itself to the process that is to be used in making

---

[8]The Reform Act, St. 1993, c. 71, § 53, made school principals rather than school committees the principal decision makers in hiring decisions for their schools. See *School Comm. of Pittsfield* v. *United Educators of Pittsfield,* 438 Mass. 753, 759 (2003). This did not alter the principle of nondelegability.

[9]In *Roxbury Community College,* the court found no need to "consider whether the finding that the grievant was qualified for [the] position . . . exceeded the arbitrator's powers . . . because [the court] conclude[d] that the preliminary finding that a vacancy existed was improper." 423 Mass. at 32-33. However, the court ruled that the principles of nondelegability recognized as applying to public elementary and secondary schools applied at the college level; indeed, the court observed that the statutory language delegating management authority to college administrations was "more emphatic and detailed" than the comparable language applicable to public elementary and secondary schools. *Id.* at 29.

such decisions, including the criteria by which the candidates will be judged. See, e.g., *School Comm. of Holbrook*, *supra* ("bargained-for procedures governing the appointment and reappointment of teachers, such as posting and evaluation requirements, are specifically enforceable"); *School Comm. of New Bedford* v. *New Bedford Educators Assn.*, 9 Mass. App. Ct. 793, 798 (1980) (same principle). Sorting out when arbitrators tread into the forbidden realm of nondelegable decision-making, or are instead properly enforcing agreed-to procedures, requires nuanced analysis on a case-by-case basis. See, e.g., *School Comm. of Boston* v. *Boston Teachers Union, Local 66, Am. Fedn. of Teachers (AFL-CIO)*, 372 Mass. 605, 614 (1977).

*Liability*. Following these principles, we conclude that it is beyond the authority of an arbitrator to question the judgment that a college administration exercises in evaluating candidates for a faculty appointment, regardless of whether the applicable collective bargaining agreement can be interpreted as subjecting such issues to arbitration.[10] Put differently, whether a college administration erred in exercising its judgment as to which candidate was best qualified is not an arbitrable issue. See *Department of State Police* v. *Massachusetts Org. of State Engrs. & Scientists*, 456 Mass. 450, 455-461 (2010) (absent alleged procedural violation or discrimination based on membership in constitutionally protected class, State police colonel's decision to terminate chemist was not arbitrable).[11] If an arbitrator were allowed to overturn a college administration's discretionary judgments on how to rank job candidates, then, absent proof of fraud, we would be compelled to let the arbitrator's decision stand

---

[10]The nondelegability doctrine renders interpretation of the collective bargaining agreement beside the point. Nevertheless, we note that the terms of the agreement easily can be read as congruent with the nondelegability doctrine. By its express terms, the preference on which Hebert relies comes into play only when the college president or designee (not an arbitrator) determines that two candidates are "equally best qualified." It is undisputed that the college president did not find Hebert and Hutchinson "equally best qualified."

[11]See also *Sheriff of Middlesex County* v. *International Bhd. of Correctional Officers, Local R1-193*, 62 Mass. App. Ct. 830, 831-834 (2005) (whether sheriff erred in failing to appoint applicant to position of deputy sheriff not arbitrable). See generally *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.*, 375 Mass. 522, 526-527 (1978) (issues within employer's exclusive and nondelegable statutory authority are not proper subject for collective bargaining or arbitration).

regardless of the reason, if any reason at all, the arbitrator gave for finding an abuse of discretion. This would render the arbitrator the ultimate decision maker on faculty hiring decisions, a result that is plainly inconsistent with G. L. c. 15A, § 22.

Accordingly, to the extent that the arbitrator here substituted his judgment for that of the college administration in making his own evaluation of the job candidates, that decision cannot stand. We are not done, however, because the union argues that the arbitrator's decision can be sustained without intruding upon matters of judgment. Specifically, it contends that the college was not free to choose Hutchinson over Hebert because Hutchinson was per se unqualified for the posted position given that she lacked a master's degree (a "required" qualification, as propounded by the college). See *School Comm. of New Bedford,* 9 Mass. App. Ct. at 798 (arbitrator's review of whether school committee hired candidate who did not meet posted minimum job requirements, including that candidate possess master's degree, does "not impermissibly limit the committee's discretion").

The college counters that the arbitrator's reasoning lacks an appreciation for how the academic world weighs such credentials. It suggests that being a doctoral candidate with "all but dissertation" (ABD) status is generally considered to provide higher rank than having a mere master's degree, and that its judgment in this regard cannot be second-guessed. This argument is not without some force. However, we ultimately conclude that, having drafted its posting expressly to *require* that candidates have a master's degree, the college was not free to determine that a candidate who had obtained neither a master's degree nor a higher degree nevertheless possessed "better" credentials than one with a master's degree.[12] We note that the college easily could have written its job posting so as to require a "master's degree or equivalent," a phrase that the college used in the collective bargaining agreement.[13] Having established the minimum job requirements as it did, the college had a good faith obligation to employ

---

[12]It is possible that others with ABD status might have been deterred from submitting an application because of the way the college phrased the requirements. Whatever the precise norms of the academic world with respect to whether ABD status would ordinarily be considered superior to having a master's degree, it is appropriate to hold the college to the requirements it posted.

[13]Compare *Boston, Boston Pub. Library* v. *Professional Staff Assn.,* 61

them, and it lay within the arbitrator's purview to determine whether the college had done so. *School Comm. of Newton* v. *Newton Sch. Custodians Assn., Local 454, SEIU,* 438 Mass. 739, 748-749 (2003) (although principal retains "actual, first-line determination of whom to hire," he is bound to make "good-faith effort" to apply criteria to which he has agreed). See *School Comm. of New Bedford, supra* (school committee bound itself to follow its own appointment criteria). In sum, although the arbitrator was without authority to substitute his judgment for that of the college administration, insofar as he ruled that the college violated the collective bargaining agreement by selecting someone who did not meet the minimum requirements set forth in the posting, his ruling cannot be disturbed.[14]

*Remedy.* It does not follow, however, that the arbitrator then could appoint Hebert an assistant professor against the wishes of the college administration. The cases consistently recognize that arbitrators do not have authority to grant such relief, because it would directly intrude upon the appointment authority left to the exclusive purview of the college administration. See, e.g., *School Comm. of Holbrook,* 395 Mass. at 655 (even where arbitrator's ruling that school committee violated collective bargaining agreement by not appointing grievant to posted position, arbitrator had no authority to compel appointment).[15] The interference with the college administration's prerogative is especially pronounced, given that — even without Hutchinson

---

Mass. App. Ct. 105, 111 (2004) (upholding arbitrator's determination that it was arbitrary and capricious for public library to conclude that applicant's experience could be substituted for having master's degree under an "exceptional instances" exception included in collective bargaining agreement).

[14]On various grounds, the college argues that the arbitrator erred in determining that Hebert was still eligible for the preference under the terms of the collective bargaining agreement. The arbitrator's determination to this effect is not open to our review, regardless of whether it is correct. See *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984) ("absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation").

[15]See also *School Comm. of Newton* v. *Newton Sch. Custodians Assn., Local 454, SEIU, supra* at 751-752 (G. L. c. 150E permits parties to elect arbitration of job appointments, but does not require that result); *School Comm. of New Bedford, supra* at 800-801 ("an arbitrator may not force specific appointments"), citing *Berkshire Hills Regional Sch. Dist. Comm.* v. *Berkshire Hills Educ. Assn.,* 375 Mass. 522, 526-527 (1978).

considered eligible for the posted search — there was at least one other candidate in the mix who did meet the minimum requirements and whom the college administration determined was better qualified than Hebert.[16] But even if there were no alternative candidates available, the college administration would remain free to pass over the entire pool of eligible candidates (as it already once did) and either to repost the position or to leave it vacant.

What relief then is appropriate to remedy the procedural violation that occurred? As the college acknowledged at oral argument, if it erred by hiring someone who did not meet the posted job requirements, then the obvious way to address the problem directly would be to start the process again. *Boston, Boston Pub. Library* v. *Professional Staff Assn.*, 61 Mass. App. Ct. 105, 111-113 (2004) (where library selected candidate who did not meet minimum posted requirements, remedy was to vacate selection and allow reposting). A new search would give all potential job applicants a fair opportunity to apply (thus mooting the procedural violation), while preserving to the college administration its exclusive authority to determine the hiring needs of the college and to make specific appointment decisions.[17]

However, reposting makes sense only if the college intends to retain the position, something that cannot be determined based on the current record.[18] Moreover, although the union would be entitled to have the position reposted if the college intends to fill it, we are hesitant to assume that — even in that scenario — reposting would necessarily be in the union's (or Hebert's) interest.[19] We need not resolve those questions, but simply direct that, in the event the college intends to maintain the contested

---

[16]Even if we take into account that the college's first choice apparently turned the job down (see note 4, *supra*), the third finalist, Kim Teupker, still was available from all that appears in the record. Moreover, it is not even clear that Hebert was the college's fourth choice in the process.

[17]How specifically to fashion any reposting lies within the discretion of the college administration. See *Boston, Boston Pub. Library, supra* at 113 (arbitrator exceeded authority in setting pay grade of posting).

[18]Whether to retain the position falls to the college administration. See *Roxbury Community College*, 423 Mass. at 32-33 (arbitrator has no authority to create vacancy); *Boston, Boston Pub. Library, supra* (reposting could be ordered only to extent that library wanted to retain position).

[19]We note that the union never sought that specific relief.

position, the union is entitled to have it reposted, using whichever criteria the college administration determines best serve the college's needs, consistent with its statutory mandates.

The question remains whether Hebert should be entitled to any damages. As the Supreme Judicial Court often has recognized, "A[n] award of damages 'is separable' from an arbitrator's mistaken conclusion that a particular decision by [school administrators] is arbitrable." *Roxbury Community College*, 423 Mass. at 33, quoting from *School Comm. of Holbrook*, 395 Mass. at 657. Therefore, "it [is] within [the arbitrator's] power to award damages for the college's violation of the agreement, so long as the damages were in an amount that would not 'have the effect of compelling reinstatement.' " *Ibid.* The damages that the arbitrator issued here plainly run afoul of this last proviso. Indeed, the arbitrator recognized that his award could coerce the college to appoint Hebert because doing so would "result[] in the College actually getting something for the money it will otherwise have to spend for a purely monetary remedy."

Although full-scale damages plainly exceed the arbitrator's authority, this does not rule out the possibility of Hebert obtaining more limited damages. *School Comm. of Holbrook*, *supra* at 657-658 (award of one-year's back pay upheld). What, if any, damages might be appropriate is, at this point, far from obvious given that the collective bargaining agreement expressly limits the compensation that an arbitrator can award for a breach of the agreement to "actual damages directly attributable to such breach." Nevertheless, under the cases, the question of damages is one for the arbitrator to resolve so long as he does not exceed his authority. *Ibid.*

*Conclusion.* In light of the foregoing, we reverse the judgment vacating the arbitrator's award. A new judgment shall enter reversing so much of the arbitrator's award as ordered that Hebert be appointed with full back pay and benefits, or that she receive full pay for each year the position exists. The new judgment also should remand the case to the arbitrator for further proceedings consistent with this opinion.

*So ordered.*