Curran, Dennis J., J.
The City of Boston discharged police officer David Williams on December 18, 2012. An Arbitrator ruled that the City did not have just cause to terminate Officer Williams and ordered the City to reinstate him. The Cily now moves to vacate the Arbitrator’s decision. The defendant the Boston Police Patrolmen’s Association has filed a cross motion asking the court to confirm the Arbitrator’s decision. For the following reasons, the City’s motion to vacate the arbitration award must be DENIED, and the Boston Police Patrolmen’s Association’s motion to confirm the award must be ALLOWED.
FACTUAL BACKGROUND
On March 15, 2009, Michael O’Brien[1] went to abar near Faneuil Hall with two friends, Tom Cincotti and Eric Leverone. Mr. O’Brien had a few beers, while Mr. Leverone drank heavily. The men left the bar and began walking toward Mr. Cincotti’s apartment in the North End. Mr. Cincotti decided to move his car, which was parked on Hanover Street, so that it would not get ticketed the next day. Messrs. O’Brien and Leverone waited on the side of the street while Mr. Cincotti got into his car. As he was moving his car out of the parking spot, Mr. Cincotti backed across the double yellow line and into a black BMW double-parked on the other side of the street. Mr. Cincotti got out of his car to speak with the other driver, Guy Fils-Aime. Mr. Fils-Aime called 911 to report the accident. Mr. Cincotti asked Mr. O’Brien to move his car out of the middle of the road.
Officer Williams and Officer Diep Nguyen responded to the 911 call and arrived shortly after midnight on March 16, 2009. Officer Williams spoke with Mr. Fils-Aime, and Officer Nguyen spoke with Mr. O’Brien and his friends. Their discussion with Officer Nguyen became heated, and Officer Williams came over to the group. Officer Williams instructed the parties to exchange information and go their separate ways. Mr. O’Brien began recording the scene with his cellular phone’s camera. Officer Williams told him that he could record the scene, but asked him to move to the sidewalk. Officer Nguyen claimed that Mr. O’Brien was in the street, while Mr. O’Brien yelled that he was on the edge of the curb. Officer Nguyen decided to place Mr. O’Brien under arrest for disorderly conduct.
Officer Nguyen had difficulty cuffing Mr. O’Brien due to his combativeness. Officer Williams then ran over, tackled Mr. O’Brien and knocked both of them to the ground, with Officer Williams landing on top of Mr. O’Brien. Officer Williams then placed his arm around Mr. O’Brien’s neck. Mr. O’Brien testified that he had trouble breathing and began to black out. Officer Williams called for assistance. Shortly thereafter, eight more officers arrived. They arrested Messrs. O’Brien and Mr. Cincotti and transported them to the station. In the police wagon, Mr. O’Brien discovered that he had urinated in his pants.
Mr. O’Brien was charged with resisting arrest, assault and battery on a police officer, and disturbing the peace. Sometime after 1:00 am, Mr. O’Brien reported chest pains and pressure in his head. The Boston EMS examined Mr. O’Brien and transported him to Massachusetts General Hospital. All charges against Messrs. O’Brien and Cincotti were later dropped in the Boston Municipal Court.
On March 19, 2009, Mr. O’Brien filed a complaint with the Internal Affairs Division of the Boston Police Department. Little, if any, investigation was conducted as a result of that complaint, and counsel for Mr. O’Brien withdrew it in May 2009. On September 24, 2009, Mr. O’Brien filed a lawsuit in federal court against the City, Officers Williams and Nguyen, and four John Doe officers, alleging unreasonable use of force, unconstitutional arrest, and assault and battery.
On September 25, 2009, counsel for Mr. O’Brien filed another IAD complaint. In April 2010, Sgt. Philip Owens of IAD interviewed Officers Williams and Nguyen. On February 18, 2011, the Department placed Officer Williams on administrative leave. In March 2011, Lt. Det. Brian McEachern of IAD interviewed both Officers Williams and Nguyen. On June 29, 2011, the Police Department issued two specifications against Officer Williams: use of unreasonable force, in violation of Rule 304, §2, and untruthfulness during the IAD interview, in violation of Rule 102, §23. Officer Nguyen was exonerated. A Boston Police Department trial board was held in November and December 2011 on the charges against Officer Williams. They were sustained against Officer Williams and he was terminated on December 18, 2012.
The Boston Patrolmen’s Association filed a grievance, contending that the discharge violated Article V(A) of the collective bargaining agreement because no just cause existed for the discharge. The case went before an Arbitrator to determine whether the City had just cause to terminate Officer Williams, and whether the City violated the collective bargaining agreement by placing Officer Williams on administrative leave on February 11, 2011. A hearing was held on September 12, October 24, and December 21, 2012. Officer Nguyen testified that Officer Williams placed his arm around Mr. O’Brien’s neck in a chokehold, and that officers are not trained to use chokeholds in using force on a person. Officer Williams described it as a *666 “semi-bear-hug hold” and demonstrated by wrapping his arms around his counsel’s body in such a way that his upper left arm and shoulder pressed against the right side of counsel’s neck.
On June 20, 2013, the Arbitrator issued his decision. He did not find Mr. O’Brien’s account of the incident credible, and concluded that Officer Williams had not used excessive force. He also determined that while Officer Williams held Mr. O’Brien with his arm across Mr. O’Brien’s throat, he did not choke him, and the force was reasonable. The Arbitrator ruled that although the actions of Officer Williams were aggressive, the aggression was warranted by Mr. O’Brien’s behavior. He found that it was highly unlikely that Mr. O’Brien was sober, that he had a motive to fabricate his testimony to protect his employment,[2] and physical evidence and medical records did not support Mr. O’Brien’s claim that he had been assaulted. The Arbitrator also considered the fact that Mr. O’Brien’s cellular phone and any video recording on it were missing, and the absence of witnesses to corroborate Mr. O’Brien’s testimony.
The Arbitrator reasoned that because Officer Williams did not use excessive force, he was not guilty of untruthfulness during the IAD investigation. He also determined that the City had acted arbitrarily by waiting until February 2011 before placing Officer Williams on administrative leave when the Police Department was aware of the allegations as early as March 2009, and certainly must have known by September 2009 when Mr. O’Brien filed his lawsuit. The Arbitrator concluded that the City did not have just cause to discharge Officer Williams, and violated the collective bargaining agreement by placing him on administrative leave. The Arbitrator ordered the City to reinstate Officer Williams and restore all benefits and compensation retroactive to the date he was placed on administrative leave.
DISCUSSION
“Judicial review of arbitration awards is extremely limited. [The court is required to] accept an arbitrator’s factual findings and legal conclusions regardless of their validity.” Massachusetts Bd. Of Higher Educ./Holyoke Cmty. Coll. v. Massachusetts Teachers Ass’n/Mass. Cmty. Coll. Council/Nat’l Educ. Ass’n, 79 Mass.App.Ct. 27, 31 (2011). See also Robichaud v. School Committee of Lowell, 456 Mass. 653, 665 (2010). “Even a grossly erroneous decision is binding in the absence of fraud.” Trustees of Boston & Maine Corp. v. Massachusetts Bay Transp. Auth., 363 Mass. 386, 390 (1973).
In reviewing the facts, this court is limited to the cold administrative record developed by the parties below.
I. Authority of the Arbitrator
The City argues that the Arbitrator exceeded his authority because the Police Commissioner has the exclusive authority to discipline or discharge officers for excessive force or being untruthful. A court shall vacate an arbitrator’s award if “the arbitrators exceeded their powers . . .” G.L.c. 150C, §11(a)(3). “[A] nondelegable authority may not be delegated to an arbitrator, even with the parties’ consent.” City of Boston v. Boston Police Superior Officers Fed’n, 466 Mass. 210, 216 (2013). “An arbitrator exceeds his authority when he intrudes upon decisions that cannot be delegated, but that are instead left by statute to the exclusive managerial control of designated public officials.” Massachusetts Bd. of Higher Educ., 79 Mass.App.Ct. at 32. “In determining whether an arbitrator exceeded his authority in a provision of an arbitration award, judicial review of the award is independent.” Local 589, Amalgamated Transit Union v. Massachusetts Bay Transp. Auth., 392 Mass. 407, 411 (1984). “Independent” judicial review is de novo review, with no deference given to the arbitrator’s decision. See City of Somerville v. Somerville Mun. Employees Ass’n, 418 Mass. 21, 25 (1994). “Sorting out when arbitrators tread into the forbidden realm of nondelegable decision-making, or are instead properly enforcing agreed-to procedures, requires nuanced analysis on a case-by-case basis.” Massachusetts Bd. of Higher Educ., 79 Mass.App.Ct. at 34.
The City contends that the legislature gave the Boston Police Commissioner the nondelegable authority to make rules and terminate officers for violating those rules. The Commissioner’s powers are statutorily defined in St. 1906, c. 291, as appearing in St. 1962, c. 322, §1. Section 10 provides: “The police commissioner shall have authority to appoint, establish and organize the police of said city...,” St. 1906, c. 291, §10, as appearing in St. 1962, c. 322, §1, section 11 of which provides, “The police commissioner shall have cognizance and control of the government, administration, disposition and discipline of the department, and of the police force of the department and shall make all needful rules and regulations for the efficiency of said police . . .” St. 1906, c. 291, §11, as appearing in St. 1962, c. 322, §1. Section 12 provides: “The police commissioner shall from time to time appoint a trial board, consisting of three captains, to hear the evidence in such complaints against officers or members of said police as said commissioner may deem it advisable to refer to said board. Said board shall report its findings to said commissioner, who may review the same and take such action thereon as he may deem advisable.” St. 1906, c. 291, §12, as appearing in St. 1962, c. 322, §1. There can be no question but that that statute confers broad administrative control and discretion upon the Police Commissioner. City of Boston, 466 Mass. at 214-15 (holding that police commissioner had the exclusive, nondelegable authority to assign and transfer officers); City of Boston v. Boston Police Superior Officers Fed’n, 52 Mass.App.Ct. 296, 299 (2001); City of Boston v. Boston Police Patrolmen’s Ass’n, 8 Mass.App.Ct. *667 220, 226-27 (1979) (holding that police commissioner had sole authority to determine whether officer should be reissued service weapon).
In accordance with his statutory authority, the Boston Police Commissioner has promulgated rules governing the actions of Boston police officers. Boston Police Department Rule 102, section 23, entitled “Departmental Reports — Truthfulness,” provides: “Employees shall submit all necessary reports on time and in accordance with established Departmental procedures . Reports submitted by employees shall be truthful and complete. No employee shall knowingly enter, or cause to be entered, any inaccurate, false or improper information.” Rule 304 provides guidelines for the use of non-lethal force by Boston police officers, of which section 2 states: “The policy of the Boston Police Department is to use only that amount of force that is reasonably necessary to overcome resistance in making an arrest or subduing an attacking.” It further provides: “An officer may also use non-lethal force if, in the process of making an arrest, the officer is met with passive resistance, i.e., an individual who refuses to get out of an automobile, or a protester who is illegally occupying a particular place. Such force should be a reasonable amount required to move the subject based on the totality of the circumstances.”
The Boston Police Patrolmen’s Association argues that the Commissioner’s statute does not abrogate the collective bargaining agreement’s requirement that terminations require just cause. The statutory authority setting forth the Commissioner’s powers certainly permits him to discipline and discharge errant officers. See, e.g., City of Boston v. Boston Police Patrolmen’s Ass’n, 443 Mass. 813, 814 (2005) (arbitration of discharge of officer for disciplinary violations including excessive force and filing false reports; vacated on other grounds); City of Boston v. Boston Police Patrolmen’s Ass’n, 74 Mass.App.Ct. 379, 380 (2009) (arbitration of termination of officer for assault with a dangerous weapon; vacated on other grounds). The collective bargaining agreement — for better or worse— was forged by hard political realities, with the City of Boston on one side, and the Boston police union on the other. It is not for this court to second-guess or criticize the political factors and dynamics that led to the existence or consequences of that agreement — indeed, a contract to which both parties freely agreed.
The City argues that the Arbitrator intruded upon the Police Commissioner’s domain when he determined that Officer Williams’s use of a chokehold was reasonable. The Arbitrator neither altered the existing rule on use of force nor did he create a new rule. Instead, he examined Officer Williams’s actions and determined whether they complied with the requirements of Rule 304. As the City admits, the use of a chokehold is not explicitly prohibited. The Arbitrator did not make a determination that a chokehold is per se reasonable under Rule 304, only that Officer Williams’s use of a chokehold was not excessive force under Rule 304. In short, the Arbitrator did not exceed his authority in finding that Officer Williams did not use excessive force.
The City also argues that the Commissioner has the sole authority to discipline officers for untruthfulness and claims that the Arbitrator found that Officer Nguyen’s testimony regarding the chokehold was a “significant divergence” from the testimony of Officer Williams. However, the City mischaracterizes the Arbitrator’s findings. The Arbitrator merely stated that the discrepancy over the chokehold was the only one worth noting. In his conclusion, the Arbitrator attributed the discrepancy to the vagueness of the word “chokehold.” The Arbitrator did not exceed his authority by making a factual finding that Officer Williams did not make an untruthful statement. The Arbitrator was not attempting to revise or modify Rule 102, or determine the appropriate sanction for untruthfulness. Based on the Arbitrator’s factual finding that Officer Williams did not lie, he found that there was no just cause for termination.
In sum, the Arbitrator did not exceed his authority-in determining that there was no just cause for terminating Officer Williams for use of excessive force or untruthfulness. Therefore, the City’s motion to vacate the award on those grounds will be denied.
II. Public Policy
The City argues that the Arbitrator’s award must be vacated because it violated public policy. The issue of public policy is one for the court, not the Arbitrator, and the court “applies] a stringent, three-part analysis to establish whether the narrow public policy exception” requires vacating the Arbitrator’s award. City of Boston, 443 Mass. at 818. First, “the public policy in question must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Id. (internal quotations and citations omitted). “Second, the conduct involved cannot be ‘disfavored conduct, in the abstract.’ ” City of Boston, 74 Mass.App.Ct. at 381. Third, the “arbitrator’s award reinstating the employee [must violate] public policy to such an extent that the employee’s conduct would have required dismissal.” City of Boston, 443 Mass. at 819, quoting Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 605 (2000).
Here, the first prong is met because there is a well-defined public policy against the use of excessive force by police officers. Similarly, there is also a public policy against untruthfulness by police officers. See City of Boston, 443 Mass. at 823 (“People will not trust the police—on the street or in court — unless they are confident that police officers are genuine in their determination to uphold the law . . . [P]olice legitimacy would be damaged severely by reports that the city continued to employ a police officer who had illegally *668 abused his power and repeatedly lied about it under oath”). As to the second prong, both excessive force and untruthfulness constitute disfavored conduct that is “integral to the performance of employment duties.” Bureau of Special Investigations, 430 Mass. at 604, quoting Massachusetts Highway Dept. v. American Fed’n of State, County and Municipal Employees, Council 93, 420 Mass. 13, 17 (1995).
The City contends that the third prong is met because Officer Williams engaged in felonious conduct in using a chokehold on Mr. O’Brien, and because Officer Williams lied about his use of a chokehold in an official report. The City claims that Officer Williams violated G.L.c. 265, §37 by using force to interfere with Mr. O’Brien’s exercise of his right to free speech, assembly, and freedom from unreasonable seizure. However, the Arbitrator explicitly found that Officer Williams used reasonable force in arresting Mr. O’Brien, and therefore, was not untruthful during the IAD investigation. Compare City of Boston, 443 Mass. at 819 (vacating arbitrator’s award rescinding termination where arbitrator found the officer “falsely arrested two individuals on misdemeanor and felony charges, lied in sworn testimony and over a period of two years about his official conduct, and knowingly and intentionally squandered the resources of the criminal justice system on false pretexts”). As is, or should be obvious, the court is constrained by the Arbitrator’s findings of fact. See Massachusetts Bd. of Higher Educ., 79 Mass.App.Ct. at 31. Thus, the third prong is not met because Officer Williams did not commit felonious conduct, and the court cannot vacate the Arbitrator’s decision on public policy grounds. See O’Brien v. New England Police Benevolent Ass’n, Local 911, 83 Mass.App.Ct. 376, 379-80 (2013) (affirming arbitrator’s award reinstating officer where arbitrator found officer did not use excessive force). Therefore, the City’s motion to vacate will be denied, and the Boston Police Patrolmen’s Association’s motion to confirm will be allowed.
This court is quite sympathetic to the City’s position that the Police Commissioner should have the right and authority to manage and discipline the police officers in his own department. Nevertheless, the court is bound by the Arbitrator’s factual determinations that Officer Williams did not use a chokehold and was not untruthful. “One of the most important police functions is to create and maintain a feeling of security in communities. To that end, it is extremely important for the police to gain and preserve public trust, maintain public confidence, and avoid an abuse of power by law enforcement officials.” Clancy v. McCabe, 441 Mass. 311, 328 (2004) (Ireland, J., dissenting). “(P)olice officers voluntarily undertake to adhere to a higher standard of conduct than that imposed on ordinary citizens . . . Police officers must comport themselves in accordance with the laws that they are sworn to enforce and behave in a manner that brings honor and respect for rather than public distrust of law enforcement personnel.” Attorney Gen. v. McHatton, 428 Mass. 790, 793-94 (1999) (internal quotations and citations omitted). Every Boston police officer — including Officer Williams — takes an oath at the time of appointment to discharge his/her duties and obey the department’s rules and regulations. The charges against Officer Williams represent a potentially serious breach of that oath and the public trust. Nonetheless, no matter how valid and poignant the police department’s concerns are, it is beyond the court’s power to grant the requested relief under these circumstances, and therefore, the Cily’s motion to vacate the award must be denied.
ORDER
For these reasons, the City’s motion to vacate the arbitration award is DENIED, and the Boston Police Patrolmen’s Association’s motion to confirm the arbitration award is ALLOWED.

 At the time, Mr. O’Brien was 28 years old, and had worked as a deputy sheriff and corrections officer for approximately five years.

 Mr. O’Brien’s was employed by the Middlesex County Sheriffs Office. That Office investigated the incident and exonerated Mr. O’Brien.